EXHIBIT 1

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BIG TEN CONFERENCE, INC.,

       Plaintiff/Counter-Defendant,

v.

Case No. 96-CV-70617-DT

Honorable Denise Page Hood
United States District Judge

BIG TEN WORLDWIDE CONCERT
AND SPORT CLUB AT TOWN CENTER,
L.L.C.,

       Defendant/Counter-Plaintiff.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I.    INTRODUCTION**

    Plaintiff Big Ten Conference, Inc. ("Big Ten Conference") filed a Complaint for injunctive relief against Big Ten Worldwide Concert and Sport Club at Town Center L.L.C. ("Big Ten Worldwide") alleging trademark infringement, unfair competition, and trademark dilution. Big Ten Conference claimed that Big Ten Worldwide was engaged in the unauthorized use of its registered trademarks. Defendant Big Ten Worldwide filed a Counterclaim for cancellation of Plaintiff's trademarks.

    A trial was held before the Court. The Court makes the following findings of fact and conclusions of law.

**II.    JURISDICTION**

    Jurisdiction is not in dispute. This Court has jurisdiction pursuant to 28 U.S.C. § 1338 and

15 U.S.C. § 1121 which provides exclusive jurisdiction over trademark actions in the federal courts and 28 U.S.C. § 1332, diversity of citizenship.

## III.    FINDINGS OF FACT

Plaintiff Big Ten Conference, Inc., formally incorporated in 1987, is a non-profit intercollegiate athletic conference headquartered in Illinois. Although the Big Ten Conference originally consisted of ten member schools, there are currently eleven member schools: the University of Illinois; the University of Michigan; the University of Minnesota; Northwestern University; Purdue University; the University of Wisconsin; Indiana University; the University of Iowa; Ohio State University; Michigan State University; and Penn State University. Formed in 1896 under a different name, Plaintiff Big Ten Conference regulates and promotes athletic events and the interests of its member schools. The term "Big Ten" has been regularly used by the Plaintiff in connection with intercollegiate athletic programs of the member schools for a century. Plaintiff registered its "Big Ten" name and marks April 15, 1988 (filed December 8, 1986). Further registrations occurred in 1993, 1994, 1995 and 1996. The mark and name "Big Ten" has been used in connection with all of the members services and events sponsored by the Plaintiff, but predominantly with athletic related events and services. Big Ten, Inc. has co-sponsored the Tournament of Roses parade held before the Rose Bowl since 1947. Since 1972, annual Big Ten "Kickoff Luncheons" have been held in Chicago to highlight Big Ten Conference member school athletes and sports teams, particularly the football teams. Beginning in 1998, Big Ten Conference, Inc. sponsored and promoted an annual post season Big Ten Men's basketball tournament, also in Chicago. Plaintiff Big Ten Conference, Inc. uses its mark on all sorts of informational material: newsletters, manuals, programs, tickets, athletic wear, for advertising on television and radio, in the

2

print media, and other types of marketing. Broadcast revenues have exceeded $100 million for over the past five years.

Defendant Big Ten Worldwide Concert and Sport Club at Town Center L.L.C. is owned and operated by Mr. Joel Schwartz. Joel Schwartz has been in the ticket brokering business since age fifteen when he first began brokering tickets to University of Michigan (a Big Ten Conference, Inc. member school) athletic events in Ann Arbor.[1] In 1976, he began using the name "Big Ten Ticket Service." Mr. Schwartz filed and used the name "Big Ten Business Enterprises" from 1987 until 1996. Since then, his business has expanded beyond the sale of tickets to sporting events to include brokering of tickets to concerts and plays and services related to special events such as transportation to events. In 1995, the business was incorporated under the name, "Big Ten Worldwide Concert and Sport Club at Town Center, L.L.C." For over seventeen years, Mr. Schwartz has been advertising in Ann Arbor and Detroit area newspapers, local telephone directories, and in brochures using the name "Big Ten" in one form or another. Defendant also subscribes to a telephone number, "1-800-85-BIG-10," which is listed in a national directory and printed on the company business cards. It is not disputed that Defendant has used the name "Big Ten." Defendant's business grosses approximately five million dollars per year.

In August 1995, Plaintiff Big Ten Conference claims it first learned that Joel Schwartz was using the name "Big Ten" in his ticket brokering business. The Defendant's business was of particular concern to Plaintiff not only because it involved the sale of tickets to sporting events at

---

[1] The Court makes no finding regarding the legality of the Defendant's ticket brokering business. Whether or not this business constitutes what is sometimes referred to as "ticket scalping" is not an issue this Court has been asked to decide. Such a decision is not required to address the merits of either the Plaintiff's Complaint or the Defendant's Counterclaim.

member schools, but the sale of tickets at higher than face value. On October 5, 1995, Big Ten

Conference formally objected to the Defendant's use of the name "Big Ten" in a letter sent by

Plaintiff's attorney. In the letter, Plaintiff demanded that Joel Schwartz cease using the name "Big

Ten" or any name "confusingly similar" to Big Ten. Plaintiff also demanded that all materials

bearing the designation Big Ten be sent to the Big Ten Conference for destruction and that Big Ten

Conference be provided an accounting of all profits derived from Mr. Schwartz's use of the name

Big Ten. At the time of the letter, Mr. Schwartz was using the name "Big Ten Enterprises." In

December 1995, Mr. Schwartz formed Defendant Big Ten Worldwide Concert and Sport Club,

L.L.C., and now conducts all his business under that name.

## IV.    CONCLUSIONS OF LAW

### A.    Trade Infringement and Unfair Competition

#### 1.    Standard

Plaintiff Big Ten claims that Defendant violated the Lanham Act, 15 U.S.C. §§ 1114(a) and

1125(a) by infringing its trademark. Trademark infringement may be established under the Act by

showing that the infringer's use of a plaintiff's mark creates "a likelihood of confusion" among the

public as to whether a plaintiff sponsors or is affiliated with the use of the mark. *Daddy's Junky

Music Stores v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997). This

"likelihood of confusion" has been described in this Circuit as the "touchstone" of trademark

infringement under the Lanham Act. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1189 (6th Cir. 1988

("*Wynn I*"). In *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648

(6th Cir 1982), the Sixth Circuit directed that eight factors be considered in determining whether

likelihood of confusion exists:

4

(1)    the strength of the plaintiff's mark;
(2)    the relatedness of the goods and services;
(3)    the similarity of the marks;
(4)    the evidence of actual confusion;
(5)    the marketing channels used;
(6)    the likely degree of purchaser care and sophistication;
(7)    the defendant's intent in selecting the mark; and
(8)    the likelihood of expansion of the product lines using the mark.

A plaintiff is not required to show all "or even most, of the factors present" in order to establish

likelihood of confusion. Instead, a plaintiff must only show that the public will likely believe that

the service or product offered by the infringing party is affiliated with the plaintiff in some way.

*Wynn I*, 839 F.2d 1186; *Frisch's Restaurants, Inc.*, 670 F.2d at 648.

### 2.    The Eight Factors

#### a.    Strength of the Mark

To establish the strength of a mark, two factors must be shown: 1) the degree to which the

mark is inherently distinctive; and 2) the degree to which it is distinctive in the marketplace.

*Blockbuster Entertainment Group v. Laylco., Inc.*, 869 F.Supp. 505, 509 (E.D. Mich. 1994), citing

*W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir. 1993).

Plaintiff claims the Big Ten mark is strong, distinctive and has acquired secondary meaning.

Plaintiff argues that its federal trademark registration for the mark Big Ten creates a presumption

that the mark is strong and therefore protected. Plaintiff also argues that the registration of these

marks create a presumption that Big Ten owns the mark and has exclusive rights to use the mark.

Some of the Big Ten marks used by Plaintiff Big Ten Conference were primarily registered

as federal trademarks. In 1988 and 1989, Plaintiff had four registered marks: a service mark

registration for the name "Big Ten"; a trademark registration for the name "Big Ten"; a service mark

5

for the banner with "Big Ten" surrounded by the names of the member schools; a service mark for

the Big Ten Conference with the shape of the states in which the member schools are located,

surrounded by the names of the schools in a circle; and a trademark in the same form as the service

mark with the state outlines. In 1990, 1993, 1994, 1995 and 1996, Plaintiff obtained registration for

several other marks with the United States Patent and Trademark office: Reg. No. 1,622,433

(registered 11/13/90, filed 1/31/89), a trademark and service mark for the name "Big Ten" cast in

the middle of the Arabic number 10; Reg. No.1,782,645 (registered 7/20/93, filed 7/22/92), a

trademark and service mark for a stylized Big Ten Conference; Reg. No. 1,835,913, a trademark for

Big Ten (11) Conference (registered 5/10/94, filed 7/22/92); Reg. No. 1,858,081 a trademark for the

stylized name Big Ten (registered 10/11/95, filed 7/22/92); Reg. No. 1,969,353, a trademark service

mark for Big Ten (registered 4/23/96, filed 8/08/94).

Big Ten asserts it has used the mark "Big Ten" continuously since 1917 and has held

trademark registrations regularly since April, 1988. These registrations have been for various

stylized and non stylized marks and have covered various services and publications and products,

including: periodicals; brochures; schedule cards; record books; programs; tickets; media guides;

athletic paraphernalia; beverage ware; clothing; toys and games; athletic equipment; and sponsoring

and promoting athletic events and member institutions' interest in sporting events.

Big Ten also claims that the "Big Ten" mark has acquired "secondary meaning." To

establish "secondary meaning," a plaintiff must show: the degree to which a mark is inherently

distinctive; and the degree to which the mark is distinctive in the marketplace. *Blockbuster*, 869 F.

Supp. at 509-510. Plaintiff claims that the Big Ten mark had gained secondary meaning as a result

of years of extensive use, promotion and advertising and media coverage.

6

In response, the Defendant argues that it has not infringed Big Ten's trademarks for a number of reasons. Defendant points out that the Big Ten trademarks, Nos. 1,782,645 and 1,835,913 are for stylized Big Ten logos. Defendant claims it uses no logos similar to these stylized logos. Evidence presented in this trial, including Defendant's brochure, schedules, membership cards and advertisements, indicate that Defendant does not use any particular stylized logo. In particular, there was no showing that Defendant used any stylized logo similar to those in Plaintiff's registrations. Defendant does use the words "Big Ten," though not in a stylized fashion. However, Defendant's use of block letters on its brochures, membership cards, schedules and advertisements parallel the block letter used by Plaintiffs in its logo. Defendant also displays the words,"Big Ten With Worldwide Pride," in the same type underneath the words "Big Ten." Similarly, one of Plaintiff's logos has "Big 10 (11)" in stylized block letters on top of a smaller "Conference," in smaller letters, below the stylized "Big Ten."

Defendant claims that Plaintiff did not register any trademarks until after 1988 and that these trademarks were allowed to lapse (after 6 years). Defendant argues that Plaintiff's current trademark registrations were obtained July 20, 1993, May 10, 1994, October 11, 1993, and April 23, 1996, and that all these dates are after Defendant began using the names "Big Ten Ticket Service" and "Big Ten Business Enterprises." Defendant points out that Plaintiff failed to file a "Section 8 Affidavit" in 1994 to preserve certain of its registrations and has therefore not continuously registered and used these marks. 15 U.S.C. § 1508 (a). See also, 37 L.F.R. § 2.161-2.163. Defendant argues that this shows the mark is weak. Plaintiff claims that identical registrations were filed within months of the lapse of its prior registrations and that Big Ten continuously used the marks, nonetheless.

The evidence supports Big Ten's position that its has continuously used the marks and the

words "Big Ten." The strength of the Big Ten mark is shown by: its use in marketing and promoting

the Big Ten Football Luncheons for the past twenty-seven years, grossing over $100,000 in 1997;

its use in promoting and marketing 100,000 tickets and over $4 million in revenue through the Big

Ten post season men's basketball tournament sponsored by the Big Ten since 1998. Big Ten

submitted news articles dating back to 1957 and books written about the Big Ten which also show

the strength of the mark. In addition advertising, use of a web site, televising of Big Ten games and

corporate partnerships with such companies as Gatorade, Keebler, Nike, Gillette and ESPN, show

that the mark is strong and has secondary meaning. The Big Ten also licenses the mark to be used

in connection with the broadcast of Big Ten athletic events and bowl games and on certain select

apparel and novelty items. The mark is strong in this respect and that it has acquired secondary

meaning. The Court finds that the mark is distinctive and distinctive in the marketplace, especially

in the area of sports.

### b.    Relatedness of the Goods and Services

Plaintiff argues that Defendant's goods and services could easily be assumed to be sponsored

or affiliated with Big Ten. This they claim is the central question for "relatedness," citing *Wynn I*

and *Big Daddy's*. Defendant asserts that it is only in the business of ticket brokering and related

services, such as transportation to and from ticketed events. Defendant claims that none of

Plaintiff's registrations cover the services Defendant provides and that Defendant's business does

not overlap any of Plaintiff's goods or services. However, Plaintiff is both directly and indirectly

involved in ticketed events, including some events that formed the basis for the start up and success

of Defendant's business. Plaintiff's mark is used in connection with the televised ticketed events

of the Big Ten Conference member schools. These same events are games and tournaments to which

8

Defendant brokers tickets. In fact, Defendant got his start brokering tickets to University of Michigan athletic events and currently still sells tickets to Big Ten athletic events, including the Rose Bowl. Plaintiff also directly sponsors at least one basketball tournament (now two - one for men's basketball, one for women's basketball), and a large "Tip Off" luncheon to which tickets are sold. Defendant has brokered tickets to the tournament sponsored by Plaintiff, but not the luncheon.

Courts have found two categories of cases in which the relatedness inquiry may be satisfied, direct competition of services and related, but not competitive services. See, *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1108 (6th Cir. 1991). Defendant argues that Plaintiff and Defendant are not in direct competition since it is in the business of reselling tickets while Plaintiff sells its tickets directly. Defendant also claims that it does not "market its services so as to rely on consumer recognition of the Big Ten Conference."

While it is true that Plaintiff's registrations only minimally overlap Defendant's business, "trademark is not limited to the goods specified in the registration, but goes to any goods which are 'likely to cause confusion' in the public's mind." *Atlas Supply Co. v. Atlas Brake Shops, Inc.*, 360 F.2d 16, 18 (6th Cir. 1966). Plaintiff has shown some relatedness in the goods or services provided by the two parties. Both Plaintiff and Defendant print sports schedules. Defendant's schedules include game schedules for the University of Michigan, Michigan State, and Notre Dame, among others. Defendant's sale of tickets to sporting events is related to the services provided to member schools and to the sale of tickets by the Big Ten to its own events. These services can be said to be related, especially in the light of Defendant's sale of tickets to Plaintiff and Plaintiff's members' events. It must be noted that this direct competition with respect to the tournament began after the lawsuit was filed. The Court finds that the parties' services are related.

9

c.    Similarity of the Marks

Big Ten asserts the similarity of the marks is "simply indisputable" because the lead and "dominant" words in Defendant's business are identical to the "Big Ten" mark. Courts have found that where a word dominates that is sufficient showing of similarity. *Century 21 Real Estate Corp. v. Sanflin*, 846 F.2d 1175, 1179 (9th Cir. 1989). In *Century 21*, the court found the name Century Investment and Realty was confusingly similar to Century 21 because the word "century" dominated. Similarly, in *Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 463 (N.D. Cal. 1991) confusing similarity was found in the use of the names GALLO and GALLO NERO, and in *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 816 (1st Cir. 1987), where the names BEETLE and BEETLEBARN were found to be confusingly similar.

The evidence at trial showed a number of things the Court must consider regarding the similarity of the marks and especially use of lead or dominant words. First, Plaintiff now uses a stylized logo that incorporates artistically the eleventh member of the Big Ten Conference. The numerals "11" are imbedded in the Big Ten stylized logo. Defendant uses no such stylized logo. However, both Plaintiff and Defendant use the words "Big Ten" regularly. Even though Mr. Schwartz asserted at trial that he did not use the words "Big Ten" alone, this assertion was not supported by the evidence. Examples of Defendant's use of the words "Big Ten" at trial included numerous ads in newspaper classifieds in both Detroit and Ann Arbor. Defendant's brochures, membership cards, schedules, and arena seating cards use the words "Big Ten Worldwide" and, in some instances, the words "Concert and Sport Club." Mr. Schwartz, however, seems to be consistent in his use of the name, Big Ten Worldwide Concert and Sport Club at Town Center, L.L.C., at this time. (The Court will address Defendant's claim that the words Big Ten are generic

10

and in common unprotected use later in this opinion.)

### d.    Evidence of Actual Confusion

### (i)    Survey

Plaintiff is not required to show actual confusion to prevail on its Lanham Act claim. Courts have concluded that such evidence is usually difficult to obtain. *Wynn Oil Co. v. American Way Serv. Corp.* 943 F.2d 595, 602 (6th Cir. 1991) ("*Wynn II*"). Surveys are often used to show evidence of actual confusion. *Union Carbide v. Ever-Ready, Inc.*, 531 F.2d 366, 382-383 (7th Cir. 1976). In this case, Plaintiff submits survey evidence to show evidence of actual confusion. Mr. Phillip Johnson presented the survey evidence. Mr. Johnson is employed at a market research company, Leo J. Shapiro and Associates, Inc., doing market research for various organizations. He has been with this company since 1971. Mr. Johnson has a Master of Business Administration degree and has designed and conducted hundreds of surveys of various types. Mr. Johnson belongs to professional organizations. He has lectured to the American Bar Association and the Practicing Law Institute. The Court is satisfied that he is an expert in market survey research. He has testified about the likelihood of confusion in a number of cases and testified on various aspects of market research and surveys in over thirty cases.

The survey Mr. Johnson conducted revealed that 43% of consumers surveyed were confused by the Defendant's use of the mark in that they believed Defendant's business to be affiliated with or sponsored by Big Ten. Numerous cases have found survey evidence of varying percentages of confusion to be highly probative evidence of actual confusion. *Union Carbide*, 531 at 382; *Blockbuster*, 869 F. Supp. at 513; *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 507 (5th Cir. 1980); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2nd Cir. 1979); *James*

*Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 279 (7th Cir. 1976).

Defendant attacks the survey arguing that the sample was not representative, was not conduced in a relevant market, and used flawed methodology. Plaintiff's survey was taken in six shopping malls in four states (Wisconsin, Ohio, Michigan and Illinois) on a weekend.[2] Mall shoppers were approached and asked to complete a survey. Targeted shoppers were to be males and females twenty-one years of age or older, who had purchased tickets for a sporting or theatrical event or would purchase such tickets within the next twelve months. The survey included 200 responses. Brochures for the Big Ten Conference, a Renaissance Fair, and a Golf Tournament were shown to the participants. Then, participants were shown two other brochures: one for Classic Tickets and one for Big Ten Worldwide. The participants were then interviewed to determine if they made any connection between Big Ten Worldwide and the Big Ten Conference.

Defendant argues that the sample size should have been larger, and the mall on a weekend day might not be the best place for a sample. Plaintiff presented a Report on the Comments of Philip Johnson, prepared by Edward Rothman. This report purported to be an assessment of the study design testified to by Mr. Johnson.

The analysis of the survey pointed to obvious issues related to the evidentiary value of the survey, including sample size, selection of survey site and participants, and bias, the Court considers all these issues in weighing the value of Mr. Johnson's testimony and survey results. The Defendant also argues that the side-by-side comparison used in the survey has been rejected by some courts. *Edison Bros. Stores, Inc. v. Cosmair, Inc.* 651 F. Supp. 1547 (S.D. N.Y. 1987). In *Edison*, survey

---

[2] These states were selected for their proximity to Michigan and the presence of Big Ten Conference schools in these areas.

participants were shown an article of clothing with the plaintiff's trademark and then a bottle of fragrance with the defendant's trademark. Over fifty percent thought the same company had manufactured the two items. The *Edison* court wrote, "the side by side alignment of the products is a somewhat unrealistic simulation of actual market conditions," *Edison, 651 F. Supp.* at 1559. The court concluded: "The test is not whether the consumer will know the difference if he sees the competing product on the same shelf. Rather, it is whether he will know the difference if the junior mark is singly presented and he has heard of the senior mark." *Id.* at 1555. The Court finds the survey in this case was not as suggestive as the *Edison* survey, although it still falls in the category of a side-by-side survey. The participants were not shown only two items. In the Big Ten survey, the participants were shown several items that required a ticket purchase. Survey participants were then shown two ticket broker brochures. Open-ended, follow-up questions were then asked about the brochures by trained interviewers.[3]

---

[3] Follow-up questions included:

    8.    Each respondent was screened for inclusion in this study as follows:

        I.    *"Before we begin, which age group are you in?"*

        IIa.    *"Have you attended any major sporting, theatrical, or concert events in the past twelve months where you had to buy tickets in advance?"*

        IIb.    *IF "NO," ASK: "Looking ahead to the coming 12 months, what are the chances you will be attending any major events like this, where you have to buy tickets in advance?"*

Questions asked about the exhibit booklet, 9, Q1:

    9.    After the screening was complete, each qualified respondent was taken to an interviewing room where they were handed an exhibit booklet and told:

The Court recognizes that an unbiased survey can be achieved by offering an open ended

question, such as the questions posed in *Union Carbide,* 531 F.2d at 385, ("Who do you think puts

out the lamp shown here? What makes you think so?) and *Exxon Corp.,* 628 at 508 (5th Cir. 1980)

---

Q1.    *Please take a look at this. It is a booklet that contains some brochures describing organizations or events which you might pick up if you are planning to attend a major event. Feel free to comment on anything that strikes you about it either positively or negatively as you go through them.*

Questions asked about the two exhibits, 10, Q. 2a, 3a:

10.    After respondents had completely finished looking at the exhibit booklet, it was taken away and put out of sight. Respondents were then shown two exhibits, the order of the exhibits was rotated as indicated by the two questionnaire versions, and asked the following question for each:

Q.2a.
Q.3a.    *Please take a look at this. Was there a brochure in the booklet I just showed you that is from or sponsored by the same company or organization as this?*

And, open-ended follow-up questions, 11. Q.2b, 3b, and 12. Q.2c, 3c:

11.    In order to understand the basis for this response, each respondent was then asked:

Q.2b.    *"What makes you say that? What else?"*

12.    Respondents who said that the booklet contained a brochure from or sponsored by the same organization or source as the exhibit were asked:

Q.2c.
Q.3c.    *"Which brochure in the booklet are you referring to?"*

14

(What is the first thing that comes to mind when looking at this sign?) However, the Court finds this survey has some value on the issue of likelihood of confusion. Although a better survey could have been developed, the survey was not completely biased and should be accorded some credibility. This Court is satisfied that the survey showed some confusion on the part of consumers. However, the Court is satisfied that the survey results alone do not establish infringement based on likelihood of confusion.

### (ii)    Likelihood of Confusion

Defendant claims that Plaintiff has not shown likelihood of confusion. Defendant argues that "Big Ten Worldwide Concert and Sport Club" is not likely to cause confusion with "Big Ten." In support of its argument, Defendant listed cases, without analyzing the reasons why the courts held that the marks were not confusing. Defendant merely argued that this court should join the numerous courts which have found no likelihood of confusion in similar or analogous situations. (Defendant's Post-Trial Br., p. 13-14)

The Court notes that in analyzing whether there is likelihood of confusion, a fact-intensive analysis is required. A party cannot argue in a conclusory manner that because certain cases find certain marks not confusing that this Court should summarily so find without analyzing the facts in those cases. The Court will address some of the cases cited by Defendant.

In *S.C. Johnson & Son, Inc. v. Phil J. Johnson et al.*, 266 F.3d 129 (1959), the Sixth Circuit found that at that time, the Lanham Act only limited a trademark's protection to the use of goods stated in the application. *Id.* at 137. The Sixth Circuit found that because the application did not cover the common wet mop, there was no infringement of the trademark and the issue of confusion need not be addressed because it was not at issue. *Id.* at 138. The court in *Allstate Ins. Co. v.*

15

*Allstate Inv. Corp.*, 210 F.Supp. 25 (W.D. La. 1962) found that there was no evidence that there was confusion of the marks. *Id.* at 29. The court further found that the character of services was different and that the parties were not in direct competition. *Id.* at 30. In *Consumers Petroleum Co. v. Consumers Co. of Illinois*, 169 F.3d 153 (7th Cir. 1948), the Seventh Circuit found that the term "consumers" was a common word, and, therefore, it only has a limited protection. *Id.* at 158. The Seventh Circuit further found that there was no confusion where each party obtained its fuel from different sources—one from oil and the other from coal. *Id.* The Seventh Circuit also found that laches applied because even though one party may have had a right to the mark, it abandoned the use of the mark. The mark was not used by one party until 1938 whereas the other party had used the mark since 1925. *Id.* at 162. In *Pabst Brewing Co. v. Decatur Brewing Co.*, 284 F. 110 (7th Cir. 1922), the Seventh Circuit found that the term "Blue Ribbon" had a long acquired special significance apart from the trade name of the product—the first prize in a contest. *Id.* at 112. The Seventh Circuit held that there was no infringement in that case. *Id.* The Second Circuit in *Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251 (2d Cir. 1982) found that the mark "Autumn" was diluted because of many uses of similar marks by third parties for over 50 years. *Id.* at 256-257. Also, the Second Circuit held that there could be no confusion because there would be no side by side placement of the products since margarine would be placed in the refrigerated section of the grocery store and bread would be placed in a different location. *Id.* at 257-258.

Contrary to Defendant's assertions, the case before this Court and the cases cited above are not similar or analogous. The Court has found in this case that the "Big Ten" mark is strong, that the parties market to the same consumers, that there has been a showing of actual confusion in this case based in part on the survey conducted by Plaintiff, and that both parties sell tickets to sporting

events. Defendant has not submitted any evidence contrary to Plaintiff's evidence that there is some confusion between the mark "Big Ten" and Defendant's use of the mark in its business name. It is noted that even though Defendant uses "Big Ten" in its name in conjunction with "Worldwide Concert and Sport Club at Town Center, L.L.C.," because the term "Sport Club" is used in that name and the "Big Ten" is involved in sports, there could be a likelihood of confusion in Defendant's use of "Big Ten" in its name.

**c.   Marketing Channels Used**

Big Ten claims that Defendant's services are promoted through the same media, informational brochures and advertising used by Plaintiff and that these services are marketed to the same consumers, "fans interested in attending Big Ten athletic events." Plaintiff claims that although it reaches a national market, both Plaintiff and Defendant cater to a Southeastern/Eastern Michigan audience where a Big Ten Conference member, the University of Michigan, is located. Plaintiff also argues that purchasers of tickets and services offered by Defendant are most likely consumers who exercise a low degree of care when purchasing tickets.

Defendant argues that the market claimed for Big Ten is not clear. However, the evidence shows that Big Ten markets it luncheon and basketball tournament to persons interested in collegiate sporting events. Otherwise, Big Ten promotes the interests of its member schools and their athletic events by overseeing its corporate partner program and its licensing operation, including the televising of Big Ten members' sporting events. As Defendant argues, Big Ten does not market its services directly to consumers except for the luncheon and the tournament.

Defendant, on the other hand, markets directly to its consumers through the use of classified and yellow pages advertising, by word of mouth, and through hotel event personnel in the Detroit

metropolitan area. Defendant argues its customers and potential customers are different from the customers of Big Ten and no confusion results. The Court finds that there may be some confusion among those customers of Defendant who are also fans of the Big Ten Conference member school events.

### f.    Likely Degree of Purchaser Care and Sophistication

Plaintiff asks the Court to find that, because of Defendant's method of advertising, consumers of this ticket brokering business are more likely to exercise a low degree of care in purchasing such tickets. The evidence showed that Defendant's services are not inexpensive. To the contrary, ticket prices offered by Defendant tend to reflect the market for hard to get ticket events, tickets purchased at the last minute, or tickets purchased in connection with the use of a limousine. In *Homeowners Group*, the court noted, "When services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion." *Homeowners Group*, 931 F.2d at 1111. Defendant cites *WCVB-TV v. Boston Athletic Association*, 926 F.2d 42 (1st Cir. 1991). The court, in that case, found there was no likelihood of confusion noting, "Nor is there any evidence that Channel 5 might somehow profit from viewers' wrongly thinking that television viewers (unlike sports fans who might want to buy an official t-shirt with the name of a favorite event team or players) wish to see the event and do not particularly care about the relation of the station to event-promoter." *WCVB-TV*, 926 F.2d at 46. Defendant suggests that consumers using its ticket brokering services to obtain tickets to the theater or sporting events do not care about whether there is a relationship between Defendant and Plaintiff. "They just want good seats." However, Defendant forgets that he made his start selling tickets to a particular Big Ten member school's sporting events, that he knowingly chose

18

the name "Big Ten," and that he continues to sell tickets to both collegiate and professional sporting events to consumers with the money to pay the ticket brokered price, most of whom, it could reasonably be inferred, are seriously interested in sporting events, know the name "Big Ten" and associate it with the Big Ten Conference and not just his ticket brokering agency. It is not clear that no likelihood of confusion exists relative to this factor.

### g.   Defendant's Intent in Selecting the Mark

Plaintiff insists that Defendant knowingly chose the mark including the words "Big Ten." Defendant does not deny this. Defendant chose the name "Big Ten Ticket Service" when he was a student at the University of Michigan in 1976, and his business was limited to re-selling tickets to University of Michigan sporting events. It can be inferred that his intent in selecting that name was to capitalize on the sale of "Big Ten" University of Michigan tickets. Defendant does not directly deny this, but claims that he did not intend to harm or compete with the Big Ten Conference.

The Sixth Circuit in *Wynn II* noted that, an "inference of intentional infringement" is supported by showing the use of another's service mark with knowledge of another's prior use of the same mark. *Wynn II,* 943 F.2d at 602-605.

Defendant asks the Court to focus on the new name of the business, "Big Ten Worldwide Concert and Sport Club at Town Center, L.L.C." Mr. Schwartz claims he changed the name of his company upon learning that Plaintiff wanted him to cease using the name "Big Ten Ticket Service." Defendant asserts that his intent in changing the name was to avoid confusion with Plaintiff.

### h.   Likelihood of Expansion of the Product Lines Using the Mark

Plaintiff's evidence showed that it has expanded its business to include a highly successful

19

post season men's basketball tournament. This expansion puts Plaintiff in direct competition with

Defendant since consumers could purchase tickets to this event directly from the Plaintiff or its

approved sources (box offices or ticket agencies), or from Defendant's ticket brokering service.

Plaintiff again cites *Homeowners Group*, 931 F.2d at 1112, and *Wynn II*, 943 F.2d at 603. Plaintiff

argues that *Homeowners Group* allows a court to look at whether this type of "natural expansion"

in services will occur in determining whether there is a likelihood of confusion. *Homeowners*, 931

F.2d at 1112. Addressing the natural expansion in services as it relates to likelihood of confusion,

the Sixth Circuit noted:

> The more important question in this case, which involves services
> which are not competitive or closely related, concerns expansion in
> the types of products or services offered by the parties. Inasmuch as
> a trademark owner is afforded greater protection against services that
> directly compete or are in the same channels of trade, a "strong
> possibility" that either party will expand his business to compete with
> the other or be marketed to the same consumers will weigh in favor
> of finding that the present use is infringing.

*Id.* There is no dispute that both parties' services have grown and continuous to grow. Although

Defendant in most instances does not directly compete with Plaintiff in the selling of tickets, markets

to the same consumers as Plaintiff. Defendant sells tickets to Plaintiff's events and Plaintiff's

members' events. No other evidence was presented that showed that Plaintiff or Defendant planned

any expansion that would further cause their markets to overlap. However, the Court finds that

Plaintiff has shown actual expansion which causes Defendant to further infringe.

Weighing all eight factors, the Court can conclude that Plaintiff's mark is infringed by

Defendant's use of the names "Big Ten" or "Big 10" (standing alone), "Big Ten Ticket Service,"

"Big Ten Business Enterprises," and "Big Ten Worldwide."

### B.    Violation of the Anti-Dilution Act

Plaintiff also brings a claim under the Federal Dilution Act of 1995, 15 U.S.C. § 1125 (c)(1) (the "Anti-Dilution Act"). In order to show a violation of the Act, the Plaintiff must show that the "Big Ten" mark is distinctive and famous and the Defendant's use of the mark creates a likelihood of dilution through tarnishment or blurring. *American Express Co. v. CFK, Inc.,* 947 F.Supp. 310, 314 (E.D. Mich. 1996). The Anti-Dilution Act was enacted to "protect famous trademarks from subsequent uses that blur or tarnish or disparage it, even in the absence of likelihood of confusion." *CFK, Inc.,* 947 F. Supp. at 314. Plaintiff claims that its mark is famous and that Defendant dilutes its mark because Defendant's business is of questionable legality and tarnishes Plaintiff's image.

### 1.    Big Ten is a Famous Mark

15 U.S.C. §1125(c)(1)(A-G) establishes a list of factors to consider in determining whether a mark is famous: the degree of inherent or acquired distinctiveness of the mark; the duration and extent of the use of the mark in connection with the goods and services with which the mark is used; the duration and extent of advertising and publicity of the mark; the geographical extent of the trading area in which the mark is used; the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought; the nature and extent of third party use; and, whether the mark was registered.

As previously discussed, "Big Ten" is a registered mark which has developed overwhelmingly secondary meaning and is inherently distinctive. The "Big Ten" mark enjoys widespread recognition identified with the Big Ten Conference member schools and this recognition is of long duration.

21

## 2.    Dilution

Dilution through tarnishment can occur in a number of ways. Courts have found that the association of a mark with illegal or questionably illegal enterprises or activities constitutes dilution by tarnishment *Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F.Supp. 204, 209 (S.D.N.Y. 1996). Tarnishment can be established by connection of the mark with "shoddy good and services, or an association with obscenity, unwholesome wares, or sexual or illegal activity." *Polo Ralph Lauren L.P. v. Schulman*, 1998 WL 110059, *5 (S.D.Tex. Feb. 8, 1998); *Coca Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183, 1189 (E.D. N.Y. 1972). Involvement of the mark in a controversial or immoral business can also tarnish a mark causing dilution. *CFK, Inc.*, 947 F. Supp. at 316.

Plaintiff argues that Defendant's business is illegal, or at least questionably legal or controversial, characterizing the business as ticket "scalping" and accusing the Defendant of "exorbitant markups on tickets" which Defendant "disguises as services." Plaintiff goes so far as to accuse Defendant of counterfeiting and stealing tickets. Plaintiff further claims that Defendant's ticket brokering business is in violation of MCL § 750.465 which prohibits ticket scalping. Plaintiff argues that the association of its mark with this type of business tarnishes its image as a sponsor of collegiate sporting events and a promoter of good sportsmanship. Plaintiff does not wish to be associated with an enterprise that re-sells tickets.

Defendant, in response, argues that the Anti-Dilution Act cannot be applied retroactively. *Circuit City Stores, Inc. v. Office Max, Inc.*, 949 F. Supp. 409 (E.D. Va. 1996); *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). In *Circuit City*, the court found that the Act did not apply to any mark first used by a defendant prior to the effective date of the Act. *Circuit City*, 949 F.Supp. at 413.

22

The Act took effect January 16, 1996. This Court has already concluded that Count III of Plaintiff's Seconded Amended Complaint does not assert a claim for dilution prior to January 16, 1996, the date of the Act.

Defendant asserts that dilution by tarnishment has been upheld where the mark has been used in an "unwholesome, unsavory or degrading context." Defendant also claims that these uses were offensive in a "very public way" citing *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979) (where the Dallas Cowboy Cheerleaders were portrayed in an X-rated movie); *Edgar Rice Burroughs, Inc. v. Manns Theaters*, 195 U.S. P.Q.159 (C.D. Cal.1976) (where Tarzan was depicted in an x-rated movie; and *Pillsbury Co. v. MilkyWay Productions, Inc.*, 215 U.S.P.Q. 954 (N.D. Ga. 1981)(where the Pillsbury Doughboy was depicted in a sexually explicit manner). Defendant asserts that Plaintiff has presented no evidence that Defendant's alleged use of the mark tarnishes the mark in the context of these cases.

No evidence was presented to show that any licensee of the Plaintiff had complained about Defendant's business. Plaintiff has lost no business or contracts. Additionally, Defendant argues that it delivers a valuable service, securing tickets to popular concerts and sporting events otherwise unavailable from box office sales.

Defendant was unable to dispute at trial Plaintiff's contention that ticket brokering is generally/popularly viewed as scalping and is frowned upon by the Big Ten and its member schools. Defendant was also unable to refute Plaintiff's evidence that ticket brokering is unfavorably viewed in the media and the public eye. However, no witness independent of the parties testified that Defendant's business is actually illegal. Moreover, Defendant showed that, despite Plaintiff's distaste for ticket brokering businesses, ads for ticket brokers were included in a newspaper piece

23

on the Big Ten Basketball Tournament.

Defendant contends that courts have rejected claims of tarnishment where a plaintiff exaggerates the harm from a defendant's use of the mark, citing *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497 (2nd Cir. 1996). In *Hormel*, the court found that the portrayal of a character named Spa'am in a Muppet movie did not tarnish Hormel's SPAM product. In order to find tarnishment, the court must find that "plaintiff's mark will suffer negative associations through defendant's use." *Id* at 507. The court found that defendant did not seek to ridicule the food SPAM, but that the character, SPA'AM, was a likeable and positive character. *Id.* The court concluded that because: 1) there was no evidence that Henson's use will cause negative association; 2) the parties were not in direct competition; and 3) the parody inheres in the product, there was no dilution based on tarnishment. *Id* at 508.

Defendant also argues that athletes in Plaintiff's member schools have been involved in "scalping scandals" and therefore the image of Plaintiff is not further tarnished by Defendant's business activities. However, the Defendant presents no case law to support its contention that subsequent dilution by tarnishment is excused by the bad behavior of others. Defendant also points to additional tarnishment by others including the book, *Big Ten Country*, which focuses on drinking on Big Ten campuses and the Playboy Magazine Big Ten issue, which features ingenues of the Big Ten Campuses. Plaintiff asserts these arguments are misplaced because Big Ten neither condones nor sponsors these activities, but has not found an appropriate way of discouraging activity which Plaintiff believes may fall under the "fair use" doctrine. "Fair use" of a mark is permitted pursuant to 15 U.S.C. § 115(b)(4) which provides,

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

15 U.S.C. § 115(b)(4). This doctrine was addressed in this circuit in *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749 (6th Cir. 1998). There, the court wrote that the critical question to determine if a use of the mark constitutes "fair use" is whether use of the mark was made "fairly" and in "good faith," and whether the use was "otherwise than as a trademark." *Id.* at 756.

The Court finds that Plaintiff's mark has been diluted through tarnishment. Michigan law prohibits ticket scalping. Although there has been no finding that Defendant has engaged in ticket scalping, there is no dispute that Defendant obtains its tickets to sporting events, which include Big Ten events, from individuals who wishes to resell their tickets. The association of Plaintiff's mark with this type of business tarnishes Big Ten's image as a sponsor of collegiate sporting events and a promoter of good sportsmanship. Plaintiff's concern that its mark not be associated with an enterprise that re-sell tickets is a legitimate concern. The Court does not find that Plaintiff has exaggerated the harm from Defendant's use of the mark. Unlike *Hormel* cited by Defendant, there is a negative association with Plaintiff's mark to Defendant's business of reselling tickets to sporting events. The Court finds that Defendant has violated the Anti-Dilution Act.

## C.    The Laches Defense

Defendant claims that Plaintiff's claims are barred by laches. Defendant argues that Plaintiff should have known of Defendant's use of the mark and taken action sooner. Defendant has not

25

hidden its use of the name "Big Ten" which it has used in some form or another for the past nineteen

years.  Defendant registered its names, "Big Ten Business Enterprises" and "Big Ten Concert and

Sport Club" with the Oakland County Clerk in December 1, 1994, August 17, 1990, and August 10,

1995, respectively.  Defendant registered its name with the Michigan Corporations and Securities

Bureau in 1995.  Mr. Schwartz applied for a peddler/solicitor permit in 1996, listing his employer

as "Big Ten Worldwide."  Another application was filed in 1997 with the employer's name listed

as "Big Ten Worldwide Concert and Sport Club at Town Center."  These applications listed football

and basketball tickets and souvenirs as the goods and services being offered.  Mr. Robert C. Vowels

testified that Plaintiff has not monitored these kind of state and county offices to uncover

inappropriate uses of its mark. Testimony showed that, when uses are made known to the Plaintiff

little action is taken beyond that taken against Defendant prior to this lawsuit.  Defendant points

specifically to the Big Ten Party Store in Ann Arbor, Michigan, home of the University of Michigan,

a Big Ten member school.  Mr. Vowels agreed that the Big Ten Party Store has been in operation

since 1953.  He admitted that Big Ten has written one letter to the party store owner regarding the

use of the mark, but has taken no other action.  Defendant includes among its exhibits a list of other

businesses using the Big Ten name, among them: "Big 10 Run," "Big Ten Towing," "Big Ten Mart,"

"Big Ten Sports Café," "Big Ten Pub," "Big Ten Auto Supply," "Big Ten Stores," and "Big Ten

Enterprises" (Texas and California).  Plaintiff has taken no any action against these potential

infringers.

Plaintiff, through its witness, Mr. Vowels, establishes that Big Ten first learned of

Defendants use of its mark in August, 1995. Plaintiff then investigated the matter and, in October,

1995, wrote to Mr. Schwartz regarding his infringing use.  When Mr. Schwartz refused to cease

using the mark, Plaintiff filed this suit in February, 1996. Plaintiff claims that it could not have known of Defendant's use prior to 1995 because Defendant was not as established, as it is now, before 1994. Mr. Schwartz admitted that the business really began to grow in 1994. In that year, he spent $36,000 on advertising as compared to $2,400 in 1988.

Plaintiff also claims that Defendant now has a permanent business address having operated as a home business prior to 1994. In addition, Plaintiff claims Defendant cannot raise a laches defense because he does not have clean hands having used the Plaintiff's mark willfully and with full knowledge that it was protected. Plaintiff also argues that, even after notice from the Big Ten, Defendant continued to use the words "Big Ten" in its name, thus demonstrating continued bad faith. *Induct-O-Matic Corp. v. Inductotherm Co.*, 747 F.2d 358, 367 (6th Cir. 1984).

In order to show a claim is barred by laches in a case seeking injunctive relief, a defendant must not only show the passage of time, but circumstances which estop the plaintiff from securing injunctive relief. *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983), citing *Carter-Wallace, Inc. v. Proctor and Gamble Co.*, 434 F.2d 794, 803 n. 4 (9th Cir. 1970). The Sixth Circuit has also held that, for laches to apply in a case seeking injunctive relief, "some affirmative conduct in the nature of estoppel, or conduct amounting to 'virtual abandonment' is necessary." *Tandy Corp. v. Malone and Hyde, Inc.*, 769 F.2d 362, 366 n. 5 (6th Cir. 1985). Plaintiff argues that Defendant can show neither estoppel nor abandonment. In order to establish estoppel, Defendant must show something more than "mere silence." A defendant must show some "intentional misleading silence," some act of misconduct or misrepresentation. *SCI Systems, Inc. v. Solidstate Controls, Inc.*, 748 F. Supp. 1257, 1262 (S.D. Ohio 1990). Defendant has also not shown any abandonment of the marks by Plaintiff, virtual or otherwise. Plaintiff continues to use the mark as much as ever.

27

The following factors set forth in *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 293 F.Supp. 892, 917 (S.D.N.Y. 1968), *affirmed and modified*, 433 F.2d 686,703-704 (2nd Cir. 1970), were used by the court in *E-Systems* to determine whether laches was available to bar relief:

1.    strength and value of trademark rights asserted;
2.    plaintiff's diligence in enforcing mark;
3.    harm to senior user if relief denied;
4.    good faith ignorance by junior users;
5.    competition between senior and junior users;
6.    extent of harm suffered by junior user because of senior user's delay.

*E-Systems*, 720 F.2d at 607.

This Court has already addressed the strength of the marks and the trademark rights of the Plaintiff. The Court has also indicated that there was no good faith ignorance by Defendant in using the mark and that Defendant purposefully used the name "Big Ten," even though his intentions may not have been malicious.

Some competition exists between the parties. Although their services overlap with respect to the sale of tickets to sporting events, and perhaps the production of team schedules, this is not substantial compared to the other services and projects of the Plaintiff, such as televising Big Ten member events and securing major sponsorships, neither of which activities are engaged in by the Defendant. The Court notes that the harm to Plaintiff is claimed to be great by way of tarnishment, as Plaintiff characterizes the Defendant as a ticket scalper. However, the evidence does not show that Defendant's business is likely to grow beyond the brokering of tickets and services attendant thereto.

Defendant claims that Plaintiff knew or should have known of the existence of Defendant and Defendant's activities. Defendant argues that Plaintiff was not diligent in policing its mark,

28

resulting in harm to Defendant as evidenced by the steady build up of Defendant's business and Defendant's substantial advertising expenditures over the past few years. Defendant also claims Plaintiff selectively enforces infringement of its mark and notes that this is the first action Plaintiff has taken against an infringer beyond a cease and desist letter.

Plaintiff counters these arguments in three ways. First, Plaintiff, as stated above, argues that it took action against Defendant in 1995, as soon as it learned of Defendant's infringing behavior. Plaintiff asserts that prior to that time Defendant, by his own admission, was a much smaller business with a minimal advertising budget. Secondly, Plaintiff asserts that Defendant has not shown that Plaintiff engaged in any behavior that amounts to something more that "mere silence" such as intentionally not proceeding against Defendant or some other misconduct. Third, Plaintiff claims that Defendant cannot assert a laches defense because Defendant does not have "clean hands," which is required to maintain a claim of laches. *Induct-O-Matic*, 747 F.2d at 367. Plaintiff claims that, because Defendant intentionally selected and purposefully used Plaintiff's mark with the intention of drawing customers initially to his re-sell tickets to a member school's athletic events, Defendant did not act in good faith ignorance, and does not have "clean hands."

The Court finds that Plaintiff's arguments are not without merit. It is unlikely that Plaintiff could have known of Defendant's business when it was minimally advertised and initially and even currently conducted predominantly in southeastern Michigan. It is also undisputed that Mr. Schwartz chose the name "Big Ten" for his brokering business because he was at a Big Ten school, re-selling Big Ten sporting event tickets and wanted to capitalize on the name "Big Ten." For these reasons, the Defendant's laches defense fails. However, the Court notes that Plaintiff has failed to diligently police and enforce its mark and appears to have singled Defendant out for prosecution

29

perhaps, because as it claims, his use is offensive to it and dilutes and tarnishes the mark at least in the southeastern Michigan area. Plaintiff, nonetheless, cannot escape the evidence presented at trial that there are numerous businesses using the name "Big Ten," from grocery stores and delis, to tire and towing companies, to athletic equipment stores, many located in areas where Plaintiff's member institutions are located. Yet, Plaintiff has pursued few of these by even a cease and desist letter. The issue of whether those businesses' use of Plaintiff's mark constitutes infringement is not before the Court. Without ruling that each of those businesses' name may or may not infringe on Plaintiff's mark, the Court notes that based on the names only, as identified by Defendant, the businesses do not involve selling tickets to sporting events. Defendant presented no evidence that those businesses are involved in the sale of tickets to sporting events.

The Court finds, because Defendant does not have clean hands, he cannot raise laches as a defense. In addition, Defendant is unable to show an action of Plaintiff amounting to estoppel or more than "mere" silence.

### D.   Big Ten Worldwide's Counterclaim

Defendant, by way of Counterclaim, alleges that Plaintiff's trademark registrations should be canceled because the mark "Big Ten" is "generic." Defendant claims that the words "Big Ten" are used widely in their generic sense to mean something great or noticeable or set apart, or to refer to a group of "ten noteworthy subjects," or in reference to the geographic area in which the Big Ten member schools are located. Defendant produced evidence to show that the Big Ten mark is used extensively in that area by numerous businesses of every sort. Defendant cites *McCarthy on Trademarks and Unfair Competition.*

30

The Court considers all these issues in weighing the value of Mr. Johnson's testimony and survey results. "Generic names are regarded by the law as free for all to use . . . a generic term merely identifies the genus of which the particular product is a species." *McCarthy on Trademarks*, §§12:1, 12:2 (4th Edition 1997). Defendant further notes that, "It is undesirable that words in common use be given a monopoly under the trademark laws. For this reason, in determining whether there has been infringement, a distinction is made between primary and secondary uses. While the secondary use may be protected, the use of a common work in its primary sense may not be." *Field Enterprises Educational Crop. v. Cove Industries, Inc.*, 297 F. Supp. 989, 995 (E.D.N.Y. 1969). The *Field* court found that the term "World Book" had achieved a secondary meaning, but that the alleged infringer had used the term "World" in its primary sense and did not therefore infringe. Defendant claims that like *Field*, while Big Ten may have gained a secondary meaning encompassing athletic events and services, the words "Big Ten" are generic in their primary use, widely used and therefore the mark is not enforceable. *Expoconsul International, Inc. v. A/E Systems, Inc.*, 755 F. Supp. 1237 (S.D.N.Y. 1991).

Plaintiff counters that *Blockbuster* sets forth four classifications of trademarks: generic; descriptive; suggestive; and fanciful and arbitrary. *Blockbuster*, 869 F. Supp. 509. Plaintiff claims its mark is arbitrary or suggestive, but not generic:

> A generic mark is generally a common description of goods and is ineligible for trademark protection. A descriptive mark describes a product's features, qualities or ingredients in ordinary language, and may be protected only if secondary meaning is established. A suggestive mark employs terms which do not describe but merely suggest the features of the product, requiring the purchaser to use imagination, thought and perception to reach a conclusion as to the nature of the goods. Fanciful and arbitrary marks are eligible for

protection without proof of secondary meaning and with ease of establishing infringements.

*Blockbuster*, 869 F. Supp. at 509. Basically, a generic mark is one which purchasers or consumers would identify as the name of the product. *McCarthy on Trademarks* §12:1, at pp 12-14.

The Court finds that the mark "Big Ten" is not generic, but descriptive, a description of the features or qualities of a product or services such as great or a grouping of ten or originating or belonging to a particular geographic area or belonging to the 10 (11) members of the Big Ten Conference, as evidenced by the use by Plaintiff (and Defendant) and the other numerous entities using the name "Big Ten." Even Defendant's witness, Richard W. Bailey, a professor of English at the University of Michigan, notes that "Big Ten" has a descriptive meaning, although he does not relate it to Plaintiff's mark.

The Court finds that Plaintiff's marks have established secondary meaning as demonstrated by the survey conducted by Plaintiff and by Defendant's own intent in using the mark, as well as the public recognition of the mark evidenced by newspaper articles, magazine articles, and books indicating that the mark "Big Ten" enjoys public recognition as relating to the Big Ten Conference, and may therefore be enforceable as to its secondary meaning. The Court has found that the "Big Ten" mark is strong, despite its widespread use, and it is enforceable as to its secondary meaning which Defendant has infringed.

## V.   **CONCLUSION**

The Court finds that Defendant has violated the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a) by infringing Plaintiff's trademark. The Court also finds that Defendant has diluted Plaintiff's mark in violation of the Anti-Dilution Act, 15 U.S.C. § 1125(c)(1). The laches defense

is unavailable to Defendant.

As to Defendant's Counterclaim, the Court finds that "Big Ten" is not generic, therefore Plaintiff's trademark registration will not be canceled.

Accordingly,

IT IS ORDERED that the Court finds in favor of Plaintiff Big Ten Conference, Inc. and against Defendant Big Ten Worldwide Concert and Sport Club at Town Center, L.L.C. on Plaintiff's Complaint. Plaintiff may move for attorney fees pursuant to Fed.R.Civ.P. 54(d)(2), with the proper supporting documents. Plaintiff may submit its Bill of Costs to the Taxation Clerk pursuant to Fed.R.Civ.P. 54(d)(1), E.D. Mich. LR 54.1 and the Bill of Costs Handbook

IT IS FURTHER ORDERED that the Court finds in favor of Counter-Defendant Big Ten Conference, Inc. and against Counter-Plaintiff Big Ten Worldwide Concert and Sport Club at Town Center, L.L.C. on the Counterclaim. The Counterclaim is DISMISSED with prejudice.

IT IS FURTHER ORDERED that Defendant is permanently enjoined from using the words "Big Ten" or "Big 10" or any stylized version thereof in any of its name or marks from the date of the entry of this Order.

DENISE PAGE HOOD
United States District Judge

DATED: __OCT 1 0 2000__

PURSUANT TO RULE 77(D), FRCivP
COPIES HAVE BEEN MAILED TO ALL
ATTORNEYS FOR ALL PARTIES ON
OCT 1 0 2000

33

DEPUTY CLERK

EXHIBIT 2

Int. Cls.: 16, 41 and 42

Prior U.S. Cls.: 38, 100, 101 and 107

## United States Patent and Trademark Office

Reg. No. 1,969,353

Registered Apr. 23, 1996

### TRADEMARK
### SERVICE MARK
### PRINCIPAL REGISTER

## BIG TEN

BIG TEN CONFERENCE, INC., THE (DELAWARE NON-PROFIT CORPORATION)
1500 WEST HIGGINS ROAD
PARK RIDGE, IL 60068

FOR: PUBLICATIONS, NAMELY BOOKS, PAMPHLETS, BROCHURES, NEWSLETTERS, JOURNALS, MAGAZINES, HANDBOOKS, MANUALS AND PROGRAMS RELATING TO ATHLETIC ACTIVITIES, IN CLASS 16 (U.S. CL. 38).

FIRST USE 0-0-1917; IN COMMERCE 0-0-1917.

FOR: ENTERTAINMENT SERVICES, NAMELY SPONSORING AND COORDINATING THE PRESENTATION OF ATHLETIC EVENTS AND CONTESTS, IN CLASS 41 (U.S. CL. 107).

FIRST USE 0-0-1917; IN COMMERCE 0-0-1917.

FOR: ASSOCIATION SERVICES, NAMELY PROMOTING THE INTERESTS OF MEMBER INSTITUTIONS PARTICIPATING IN VARIOUS SPORTS ATTRACTIONS, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 0-0-1917; IN COMMERCE 0-0-1917.

OWNER OF U.S. REG. NOS. 1,782,645, 1,835,913 AND OTHERS.

SER. NO. 74-558,125, FILED 8-8-1994.

BRIAN WEBER, EXAMINING ATTORNEY

EXHIBIT 3

Int. Cls.: 16, 41 and 42

Prior U.S. Cls.: 38, 100 and 107

## United States Patent and Trademark Office

Reg. No. 1,782,645
Registered July 20, 1993

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER



BIG TEN CONFERENCE, INC., THE (DELA-WARE NON-PROFIT CORPORATION)
1500 W. HIGGINS ROAD
PARK RIDGE, IL 60068

FOR: PUBLICATIONS; NAMELY, BOOKS, PAMPHLETS, BROCHURES, NEWSLETTERS, JOURNALS, MAGAZINES, HANDBOOKS, MANUALS AND PROGRAMS, ALL RELATING TO ATHLETIC ACTIVITIES, IN CLASS 16 (U.S. CL. 38).

FIRST USE 10–1–1991; IN COMMERCE 10–1–1991.

FOR: ENTERTAINMENT SERVICES; NAMELY, SPONSORING AND COORDINAT-ING THE PRESENTATION OF ATHLETIC EVENTS AND CONTESTS, AND EDUCATION-AL SERVICES; NAMELY, CONDUCTING CLINICS AND CLASSES IN THE FIELD OF ATHLETICS AND DRUG ABUSE PREVEN-TION, AND DISTRIBUTING COURSE MATERI-ALS IN CONNECTION THEREWITH, IN CLASS 41 (U.S. CL. 107).

FIRST USE 8–2–1991; IN COMMERCE 8–2–1991.

FOR: ASSOCIATION SERVICES; NAMELY, PROMOTING THE INTERESTS OF MEMBER INSTITUTIONS PARTICIPATING IN VARIOUS SPORTS ATTRACTIONS, IN CLASS 42 (U.S. CL. 100).

FIRST USE 10–1–1991; IN COMMERCE 10–1–1991.

OWNER OF U.S. REG. NO. 1,483,365 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CONFERENCE", APART FROM THE MARK AS SHOWN.

SER. NO. 74–296,578, FILED 7–22–1992.

JERI J. FICKES, EXAMINING ATTORNEY

EXHIBIT 4

Side - 1



**NOTICE OF PUBLICATION UNDER §12(a)**
**MAILING DATE: Apr 4, 2007**
**PUBLICATION DATE:  Apr 24, 2007**

The mark identified below will be published in the Official Gazette on Apr 24, 2007.  Any party who believes they will be damaged by registration of the mark may oppose its registration by filing an opposition to registration or a request to extend the time to oppose within thirty (30) days from the publication date on this notice.  If no opposition is filed within the time specified by law, the USPTO may issue a Notice of Allowance.

To view the Official Gazette online or to order a paper copy, visit the USPTO website at http://www.uspto.gov/web/trademarks/tmog/ any time within the five-week period after the date of publication.  You may also order a printed version from the U.S. Government Printing Office (GPO) at http://bookstore.gpo.gov or 202-512-1800.  To check the status of your application, go to http://tarr.uspto.gov/.

**SERIAL NUMBER:**          **78966000**
**MARK:**                          **BIG TEN NETWORK**
**OWNER:**                        **Big Ten Conference, Inc., The**

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

RICHARD M ASSMUS
MAYER BROWN ROWE & MAW LLP
PO BOX 2828
CHICAGO, IL   60690-2828

EXHIBIT 5

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO

**ISSUE DATE:** Jul 17, 2007

RICHARD M. ASSMUS
MAYER BROWN ROWE & MAW LLP
PO BOX 2828
CHICAGO, IL 60690-2828

ATTORNEY
REFERENCE NUMBER

06096961

---

### ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

### The following information should be reviewed for accuracy:

SERIAL NUMBER:          78/966000
MARK:                   BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                  Big Ten Conference, Inc., The
                        1500 Higgins Road
                        Park Ridge , ILLINOIS  60068

This application has the following bases, but not necessarily for all listed goods/services:
Section 1(a): NO          Section 1(b): YES          Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

038 -    Television transmission services; streaming of audio and video material on the Internet -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

041 -    Entertainment services, namely, production and distribution of television programs; providing on-line information in the field of sports, television, video and audio entertainment via a global communications network; production and distribution of programs featuring sports,

television, video and audio entertainment transmitted via wireless communication devices, namely cell phones, personal digital assistants, computers, and wireless handhelds; entertainment services, namely, providing on-line computer games -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

**ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS**

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE  If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550  Please include the serial number of your application on ALL correspondence with the USPTO

ISSUE DATE:  Aug 21, 2007

RICHARD M. ASSMUS                                                    ATTORNEY
MAYER BROWN ROWE & MAW LLP                              REFERENCE NUMBER
PO BOX 2828
CHICAGO, IL 60690-2828                                                    06112413

---

### ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce.  You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark.  You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request").  If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed.  Applicant may file a total of five (5) extension requests.  FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE ABANDONMENT OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees.  Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information.  Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online.  If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

### The following information should be reviewed for accuracy:

SERIAL NUMBER:            78/971639
MARK:                            BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                          The Big Ten Conference, Inc.
                                      1500 Higgins Road
                                      Park Ridge , ILLINOIS  60068

This application has the following bases, but not necessarily for all listed goods/services:
        Section 1(a): NO                    Section 1(b): YES                    Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

009 -       Computer and video software featuring sports entertainment; computer and video game software; downloadable ring tones, graphics, wallpaper, games and music via a global computer network and wireless devices; downloadable television programs featuring sports events, news and entertainment; downloadable audio and video recordings featuring sports events, news and entertainment; pre-recorded video tapes, video cassettes, video discs, and DVD's featuring sports events, news and entertainment; pre-recorded audio tapes, audio cassettes, and audio discs featuring sports events, news and entertainment -- FIRST USE DATE: NONE ; -- USE IN COMMERCE DATE: NONE

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

---

**ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS**

Corrected   Feb 21, 2008

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:** Jul 24, 2007

RICHARD M. ASSMUS                                          ATTORNEY
MAYER BROWN ROWE & MAW LLP                    REFERENCE NUMBER
PO BOX 2828
CHICAGO, IL 60690-2828                                          06112289

---

### ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE ABANDONMENT OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

### The following information should be reviewed for accuracy:

SERIAL NUMBER:              78/971650
MARK:                              BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                           The Big Ten Conference, Inc.
                                       1500 Higgins Road
                                       Park Ridge , ILLINOIS   60068

This application has the following bases, but not necessarily for all listed goods/services:
        Section 1(a): NO                    Section 1(b): YES                    Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

016 -        Publications, namely, books, magazines, pamphlets, brochures, newsletters and journals, all relating to athletic activities; wall calendars;
             stickers; bumper stickers; trading cards -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

### ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:** Jul 24, 2007

RICHARD M. ASSMUS
MAYER BROWN ROWE & MAW LLP
PO BOX 2828
CHICAGO, IL 60690-2828

ATTORNEY
REFERENCE NUMBER

06112289

---

## ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request").  If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

## The following information should be reviewed for accuracy:

SERIAL NUMBER:        78/971650
MARK:                BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                The Big Ten Conference, Inc.
                     1500 Higgins Road
                     Park Ridge , ILLINOIS   60068

This application has the following bases, but not necessarily for all listed goods/services:
    Section 1(a): NO          Section 1(b): YES          Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

016 -      Publications, namely, books, magazines, pamphlets, brochures, newsletters and journals, all relating to athletic activities; posters; wall calendars; notebooks; stickers; bumper stickers; pens and pencils; trading cards -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:** Jul 24, 2007

RICHARD M. ASSMUS                                                           ATTORNEY
MAYER BROWN ROWE & MAW LLP                                      REFERENCE NUMBER
PO BOX 2828
CHICAGO, IL 60690-2828                                                            06112325

---

### ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce.  You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark.  You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request").  If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed.  Applicant may file a total of five (5) extension requests.  FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees.  Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information.  Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online.  If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

### The following information should be reviewed for accuracy:

SERIAL NUMBER:                   78/971645
MARK:                                    BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                                  The Big Ten Conference, Inc.
                                              1500 Higgins Road
                                              Park Ridge , ILLINOIS   60068

This application has the following bases, but not necessarily for all listed goods/services:
          Section 1(a): NO                     Section 1(b): YES                    Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

025 -      Hats; caps; t-shirts; shirts; jerseys; sweatshirts; sweatpants; sweaters; jackets; ties; scarves; pajamas; nightgowns; boxer shorts; shoes; socks; belts; infant wear -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

### ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:** Jul 24, 2007

RICHARD M. ASSMUS
MAYER BROWN ROWE & MAW LLP
PO BOX 2828
CHICAGO, IL 60690-2828

ATTORNEY
REFERENCE NUMBER

06112436

---

### ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

### The following information should be reviewed for accuracy:

SERIAL NUMBER:          78/971652
MARK:                   BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                  The Big Ten Conference, Inc.
                        1500 Higgins Road
                        Park Ridge , ILLINOIS  60068

This application has the following bases, but not necessarily for all listed goods/services:
    Section 1(a): NO              Section 1(b): YES              Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

014 -     Watches; watchbands; keychains of precious metal; rings; ornamental pins; necklaces -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

### ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:** Jul 24, 2007

RICHARD M. ASSMUS
MAYER BROWN ROWE & MAW LLP
PO BOX 2828
CHICAGO, IL 60690-2828

ATTORNEY
REFERENCE NUMBER

06112295

---

## ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

### The following information should be reviewed for accuracy:

SERIAL NUMBER:              78/971648
MARK:                       BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                      The Big Ten Conference, Inc.
                            1500 Higgins Road
                            Park Ridge , ILLINOIS  60068

This application has the following bases, but not necessarily for all listed goods/services:
     Section 1(a): NO              Section 1(b): YES              Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

018 -     All-purpose sports bags; waist packs; beach bags; knapsacks; backpacks -- FIRST USE DATE: NONE: -- USE IN COMMERCE DATE: NONE

## ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO

**ISSUE DATE:** Jul 24, 2007

RICHARD M. ASSMUS
MAYER BROWN ROWE & MAW LLP
PO BOX 2828
CHICAGO, IL 60690-2828

ATTORNEY
REFERENCE NUMBER

06112319

## ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE ABANDONMENT OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

### The following information should be reviewed for accuracy:

SERIAL NUMBER:           78/971647
MARK:                    BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                   The Big Ten Conference, Inc.
                         1500 Higgins Road
                         Park Ridge , ILLINOIS   60068

This application has the following bases, but not necessarily for all listed goods/services:
Section 1(a): NO              Section 1(b): YES              Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

021 -     Beverage glassware; coasters not of paper and not being table linen; mugs; plastic drinking bottles sold empty; thermal insulated wrap for cans to keep the contents hot or cold -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

### ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

Corrected   Feb 21, 2008

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO

**ISSUE DATE:** Jul 24, 2007

RICHARD M. ASSMUS                                    ATTORNEY
MAYER BROWN ROWE & MAW LLP                 REFERENCE NUMBER
PO BOX 2828
CHICAGO, IL 60690-2828                                  06112325

---

## ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE ABANDONMENT OF YOUR APPLICATION.


Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

### The following information should be reviewed for accuracy:

SERIAL NUMBER:              78/971645
MARK:                              BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                           The Big Ten Conference, Inc.
                                       1500 Higgins Road
                                       Park Ridge , ILLINOIS   60068

This application has the following bases, but not necessarily for all listed goods/services:
       Section 1(a): NO                     Section 1(b): YES                    Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS


025 -      jerseys; sweatpants; sweaters; ties; scarves; pajamas; nightgowns; boxer shorts; shoes; socks; belts; infant wear -- FIRST USE DATE: NONE; --
           USE IN COMMERCE DATE: NONE


### ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550. Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:** Jul 24, 2007

RICHARD M. ASSMUS
MAYER BROWN ROWE & MAW LLP
PO BOX 2828
CHICAGO, IL 60690-2828

ATTORNEY
REFERENCE NUMBER

06112407

---

## ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE ABANDONMENT OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

## The following information should be reviewed for accuracy:

SERIAL NUMBER:            78/971636
MARK:                     BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                    The Big Ten Conference, Inc.
                          1500 Higgins Road
                          Park Ridge , ILLINOIS  60068

This application has the following bases, but not necessarily for all listed goods/services:
    Section 1(a): NO        Section 1(b): YES        Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

006 -     Metal key chains; metal key chain tags -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

### ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE:  If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 571-273-9550.  Please include the serial number of your application on ALL correspondence with the USPTO.

**ISSUE DATE:**  Sep 18, 2007

RICHARD M. ASSMUS
MAYER BROWN ROWE & MAW LLP
PO BOX 2828
CHICAGO, IL 60690-2828

ATTORNEY
REFERENCE NUMBER

06112331

---

### ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce.  You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark.  You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request").  If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed.  Applicant may file a total of five (5) extension requests.  FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use " and "Extension Request" have many legal requirements including fees.  Therefore, we encourage use of the USPTO forms, available online at <u>http://www.uspto.gov/teas/index.html</u> (under "File a PRE-registration form"), to avoid the possible omission of important information.  Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online.  If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

---

### The following information should be reviewed for accuracy:

SERIAL NUMBER:              78/971644
MARK:                       BIG TEN NETWORK (STANDARD CHARACTER MARK)
OWNER:                      The Big Ten Conference, Inc.
                            1500 Higgins Road
                            Park Ridge , ILLINOIS   60068

This application has the following bases, but not necessarily for all listed goods/services:
    Section 1(a): NO            Section 1(b): YES            Section 44(e): NO

## GOODS/SERVICES BY INTERNATIONAL CLASS

028 -      Plush toys; games and athletic equipment, namely, board games, action skill games, yo-yos, dominoes, balls, namely, soccer balls, volleyballs, baseballs, golf balls, footballs and miniature footballs, fishing tackle, flying discs, hockey pucks, golf tees, balloons, swim floats for recreational use, and swim action game equipment, namely, volleyballs and basketballs for pools -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

EXHIBIT 6

Int. Cl.: 38

Prior U.S. Cls.: 100, 101, and 104

## United States Patent and Trademark Office

**Reg. No. 3,412,122**
Registered Apr. 15, 2008

## SERVICE MARK
### PRINCIPAL REGISTER



THE BIG TEN CONFERENCE, INC. (DELAWARE NON-PROFIT CORPORATION)
1500 HIGGINS ROAD
PARK RIDGE, IL 60068

FOR: TELEVISION TRANSMISSION SERVICES; STREAMING OF AUDIO AND VIDEO MATERIAL ON THE INTERNET, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 8-0-2007; IN COMMERCE 8-0-2007.

OWNER OF U.S. REG. NOS. 1,782,645, 1,969,353, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NETWORK", APART FROM THE MARK AS SHOWN.

SN 77-020,175, FILED 10-12-2006.

BARBARA RUTLAND, EXAMINING ATTORNEY