IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT W. WELSH, d/b/a BIG TEN DEVELOPMENT, | ) ) ) |
| Plaintiff, | ) Case No. 08 C 1342 ) |
| v. | ) Judge Joan B. Gottschall ) Magistrate Judge Susan E. Cox |
| BIG TEN CONFERENCE, INC., | ) ) |
| Defendants. | ) ) ) |

### WELSH'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Defendant's motion to dismiss simply ignores the fundamental and detailed factual predicate for Welsh's claims—facts that are confirmed by the Conference's own documents and admissions. We submit that the motion should be denied.

### Welsh's Sec. 38 Claim is Based on Trade Secret Theft

Critical to the fallacy of the Conference's motion is the not-so-clever effort by the Conference to simply ignore that the basis for Welsh's Sec. 38 claim is the violation of Welsh's trade secret rights with resulting money damages. Indeed and contrary to the Conference's straw man argument, Welsh does not rely on so-called trademark rights in Big Ten Network nor must he so rely to prevail in this case. It is for this fundamental reason that we respectfully submit that the Conference's motion must be denied.

As we specifically allege, Welsh—without objection or protest and d/b/a as Big Ten Development--owned a valuable and proprietary Business Plan. Welsh's Confidential Business Plan (Exhibit A to the Amended Complaint) sets forth in detail the funding, development and implementation of, inter alia, the Big Ten Network, Big Ten Internet, Big Ten Marketing and Big Ten Restaurants. These detailed business plans and the names designated by Welsh were submitted to and discussed with and considered by the Conference and Conference constituents as <u>trade secrets</u> of Welsh. As we specifically allege and while encouraging and endorsing the legitimacy of Big Ten Development (e.g. Exhibit C), the Conference expressly acknowledged and agreed to "the confidential nature of the Business Plan" (*see* Exhibit B). Thereafter and based on Welsh's submission and negotiations with the Conference for many months, the Conference wrongfully converted the Business Plan and the Big Ten Network name and

falsely represented to the PTO that it, rather than Welsh, owned the right to use Welsh's confidential business plan.

In attempting to water down the viability of Welsh's proprietary and confidential trade secrets and in an effort to shore up the bogus argument that Welsh has no trademark claim, the Conference incorrectly asserts that Welsh never sought to exploit his proprietary plan. That is dead wrong—Welsh did so with the Conference's blessing and encouragement. Thus and beginning at least as early as the spring of 1997, Welsh initiated communications with Conference representatives and, after meetings and negotiations in early 1998, presented his Confidential Business Plan to the Conference on May 18. (See Amended Complaint, paragraphs 5-7). Indeed, it is precisely Welsh's attempted exploitation that led to the disclosure of the mark and the attendant Confidential Business Plan to the Conference. The damage to Welsh was the foiling of that Confidential Business Plan by the Conference's conversion of Welsh's trade secrets followed by the fraudulent registration and wrongful usurpation of the Big Ten Network mark.

### Welsh's Allegations Satisfy the Pleading Requirements of Rule 9

As mandated by Rule 9(b), the Amended Complaint delineates with particularity the specific and detailed wrongful acts of the Conference which establish (a) that the Conference's challenged trademark rights were falsely and fraudulently procured as a result of the compromise of Welsh's <u>trade secrets</u> and (b) that Welsh suffered and sustained injury as a consequence of the Conference's fraud. Merely by way of example and at Paragraph 21 of the Amended Complaint, we assert:

- The "BIG TEN NETWORK" name and plan were confidential and proprietary trade secrets of Welsh;

- Welsh's legal rights were superior to any alleged rights of the Conference;

- The Conference had actual knowledge of Welsh's superior trade secret rights when submitting false sworn statements to the PTO;

- The sworn statements of the Conference falsely asserted that the Conference and "no other person" had the right to use the mark;

- In making such false assertions, the Conference did so with wrongful intent and under penalty of perjury;

- The PTO reasonably relied on the Conference's false statements; and

- Welsh has suffered direct and substantial injury as a result of the Conference's fraudulent acts.

## The Conference's Legal Analysis is Fatally Flawed---
## The Citation of the *Carmichael* Decision Misses the Mark

The Conference cites the *Carmichael* decision, as "precisely on point." It is anything but. That case has nothing to do with the type of wrongs suffered and damages incurred by Welsh. Rather, *Carmichael* focuses on another element of a Sec. 38 claim, namely, whether there was a misrepresentation to the PTO. "The main issue in those counts asserting fraud on the PTO is whether the Plaintiffs have sufficiently alleged that the Defendants made false representations regarding a material fact." *Carmichael* at *3. After making that statement defining the issue, the court carefully analyzes defendant's allegedly false representations to the PTO and concludes that they were not, in fact, false. In *Carmichael,* Plaintiff's first argument was that the plaintiff originated the business idea at issue. The court reasons as follows: "The fact that Ms. Shea hatched the original idea for marketing a perfume under the STARDUST name simply does not give her any rights to the trademark; only by actual usage-which Plaintiffs do not allege-do such rights accrue." *Id*. at *4.

This is obviously correct. Mere creative origination does not convey ownership rights. However and in the present case, Welsh's Confidential Business Plan constitutes trade secrets. Trade secret law - rather than trademark law - is the source of Welsh's rights. Further and in *Carmichael,* Plaintiff's second argument was that defendant--by registering the mark in its own name--was acting contrary to an agency agreement with plaintiff. The court held that such an agreement does not vest ownership of the mark in plaintiff. Thus, the court held, defendant's representation that it owned the mark was simply not false. "Consequently, there is no possible set of facts that Plaintiff could establish consistent with the allegations that would demonstrate the falsity of Mr. Prime's oath to the PTO. This inability is fatal to Plaintiffs' claim of fraudulent procurement of a federal trademark." *Id*. at *5.

Again, the present situation is reverse. Welsh concededly owned the Confidential Business Plan and the names for the business components of the plan as <u>trade secrets</u> at the time Welsh disclosed the Confidential Business Plan in strict confidence to the Conference. The Conference has converted those trade secrets and falsely represented ownership to the PTO.

More importantly, *Carmichael*'s holding on the Sec. 38 claim shows that the case does not address the issue for which the Conference cites it. The case is about misrepresentation. It does not in any way address--let alone discuss--the injury requirement. But in the present case, the Conference's main challenge to Welsh's Sec. 38 claim is entirely about the injury requirement. It is premised on the feeble argument, that the Conference has the unilateral right to redefine an admitted confidential relationship by an *ex post* rejection of the express confidentiality agreement under which Welsh disclosed trade secrets to the Conference.

The manifest fallacy of the Conference's theory is crystallized in the Conference's argument that: "[Welsh] claims trademark rights in Big Ten Network, a name that he never registered or used commercially . . . ." Not so and as noted above, Welsh did pursue commercial exploitation. However and more importantly, Welsh claims <u>trade secret</u> rights, rather than trademark rights. It is those trade secret rights that the Conference damaged by their conversion. Sec. 38 requires an injury to plaintiff. The violation of Welsh's <u>trade secret</u> rights with resulting monetary damage is that injury. Welsh simply does not rely on trademark rights in BIG TEN NETWORK and, we submit, the Conference's motion must fail.

**The Remaining Authorities Cited by the Conference do not<br>Support Dismissal of Welsh's Well-Pled Sec. 38 Claim**

As we have demonstrated, Welsh has specifically alleged a viable Sec. 38 claim and has delineated cognizable injury flowing from the Conference's fraudulent registration. Nonetheless, the Conference mistakenly asserts that to be cognizable, Welsh's injury must be to an existing trademark right owned by Welsh. That argument is dead wrong and the Conference citations do not support that erroneous thesis.

For example, in *Jackson v. Lynley Designs*, the court reasoned as follows:

> "Like Section 43(a), Section 38 provides that an action may be brought by "any person injured" by a falsely or fraudulently procured trademark registration. That person may sue for "any damages sustained in consequence" of a violation of the statute. Thus, **Section 38 permits suits not only by a competitor or a member of a purely commercial class, but by any person who is injured by the registration of a trademark by virtue of a false or fraudulent statement or declaration**. Therefore, as with Section 43(a) if plaintiff can demonstrate <u>a reasonable interest to be protected</u> against the use of false or fraudulent statements or representations in procuring a trademark registration, she can maintain this suit. But it is not enough for the plaintiff merely to establish fraud in the registration of the trademark. Cases construing Section 43(a), and common sense, suggest **she must also show that she sustained some damage in consequence of the fraud; she must indicate an offense to a protected interest**."
> 729 F. Supp. at 500 (emphasis added).

Thus, the Conference's own case refutes the gravamen of its argument. In the present case, Welsh's protected interests are clearly delineated trade secrets as embodied in the Confidential Business Plan (Exhibit A) and as defined, for example, in paragraphs 6 & 29 of the Amended Complaint. The offense is the Conference's theft of the trade secrets; and the damage is the unlawful compromise of

the Confidential Business Plan that Welsh had developed.

The *Jackson* court also held that in that case, plaintiff had not alleged any damage: "The Court finds that Lisa Jackson has not articulated or established sufficient direct injury resulting from the alleged fraudulent representations and, thus, has not demonstrated a reasonable interest to be protected under Section 38. Plaintiff argues, without support, that she has a property right in her name. Assuming that she does have such a right, plaintiff has not shown how this property right was interfered with in the context of the Lanham Act. Lisa Jackson is not engaged in a trade or business which might result in damage to good will. **Nor has she ever attempted to commercially exploit her name in any fashion** so that defendants' actions have caused her to lose business. In short, plaintiff simply has completely failed to explain how the alleged fraud has injured her." *Id.* (emphasis added).

In the present case, Welsh did exactly what Lisa Jackson failed to do.

Similarly, *Hampshire v. Highland* is inapposite. That case involved no theft by a defendant of plaintiff's mark and business plan, and thus no subsequent suppression of plaintiff's business activity relating to the stolen plan. *Gilbert/Robinson* is also inapposite because it stands for the unremarkable proposition that Sec. 38 claims must arise from and at the time of the fraudulent registration. *See Maker's Mark v. Diageo* (W.D. Ky. 2007 WL 4292392), at *4 (attached hereto) (distinguishing *Gilbert*). *See also Gilbert* at 990 ("Carrie's injury arose many years [after the allegedly fraudulent registration] . . . ."

The remaining authorities referenced by the Conference are simply not applicable to this case. They neither address nor challenge the viability of Welsh's Sec. 38 claim—a viable claim that delineates with particularity the wrongful acts of the Conference whereby trademark rights were falsely and fraudulently procured as a result of the compromise of Welsh's <u>trade secrets.</u>

## COUNT II ALLEGES A VIABLE CLAIM OF TRADE SECRET THEFT

The defendant's contention that Count II (Violation of the Illinois Trade Secrets Act) fails to state a claim is similarly incorrect. The defendant contends that Welsh failed to identify any alleged trade secrets in his Confidential Business Plan. The Defendant is wrong.

Count II alleges a violation of 765 ILCS § 1065/1 *et seq.* which prohibits any person from utilizing the trade secrets of another for the violator's own advantage. The Act defines "trade secrets" to include:

> (d) information, including but not limited to, technical or non-technical data, a formula, pattern, compilations, program, device, method, technique, drawing , process, financial data or list of actual or potential customers or suppliers that:

      (1) is sufficiently secret to drive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

      (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

765 ILCS § 1065. *See* also Amended Complaint at ¶ 24.

      The details of Welsh's trade secrets – which have been illegally misappropriated by the defendant in violation of an express agreement of confidentiality – are explicitly set forth in the complaint. For example and at paragraph 6 of the amended complaint, Welsh sets forth specific trade secrets at issue – including programs that the new network should develop; methods to employed to implement those programs; the target customers and audiences to be developed; and the specific projections of the nature and types of revenues and expenses the new network can expect. *See* Amended Complaint at ¶ 6. This kind of admittedly confidential information – in which the economic value is explicitly set forth as part of the Confidential Plan – precisely satisfies the definition of "trade secrets" under the statute. *See, e.g., Nilssen v. Motorola Inc.*, 963 F Supp 664 (N.D. Ill. 1997) (Under Illinois law, trade secret may exist in combination of a number of elements of information, even if discrete element may be found in public domain); *ISC – Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310 (N.D. Ill. 1990) (The effort of compiling useful information is entitled to trade secret protection under Illinois law even if the information is otherwise generally known.).

      Further, Welsh has attached the entire Confidential Business Plan to the complaint - making it, of course, part of the pleading. Throughout the Confidential Business Plan (e.g. at pages 6-8 and 18-21) Welsh delineates the trade secret subject matter as referenced above and demonstrates the confidential manner in which such secrets were protected pursuant to an express agreement with the Conference. *See* Exhibit A to Amended Complaint.

### The Warmed Over Challenge To Welsh's Well Pled Breach Of Contract Claim Simply Ignores The Amended Allegations Of Count III

      The defendant's challenge to Count III (Breach of Contract) completely misses the mark. Frankly, it appears that the defendants chose to ignore the additional allegations contained in the amended complaint and merely re-filed their earlier motion. For instance, the defendant contends that Count III states an "implied-in-fact" contract claim. But the defendant is confused. In the amended complaint, Welsh alleges that The Big Ten Conference breached an express contract with Welsh to maintain the confidentiality of Welsh's business plan including its programs, methods and other trade secrets. The defendant's attack on Count III – that is, that it does not plead the elements of an "implied-in-fact" contract" – is wholly misplaced. Welsh fully and properly pleads the necessary elements for breach of

6

contract and the defendant's motion should be denied.

Specifically, the defendant contends that Welsh "has not pleaded the specific offer, acceptance or consideration, let alone a meeting of the minds on essential contract terms." *See* Defendant's brief at 14. But, at paragraph 29, Welsh allege the following:

> In 1998, The Big Ten Conference knew that Welsh presented his Confidential Business Plan anticipating the development of, among other programs, the "**BIG TEN NETWORK.**" Indeed, Welsh offered to disclose the Welsh Confidential Business Plan and all its details on the specific condition his Plan would remain confidential. The Big Ten Conference accepted Welsh's offer and expressly acknowledged the confidential nature of the Welsh Business Plan. (Exhibit B) Thus, there can be no dispute that there was a meeting of the minds regarding the confidentiality of Welsh's work.

*See* Amended Complaint at ¶ 29. Welsh clearly and unequivocally states the principal terms of the contract – including offer, acceptance and the meeting of the minds. Indeed, Welsh also spells out how he was induced to submit and present his Confidential Plan and consideration supporting the contract. *See, e.g., id.* at ¶¶ 30-34.[1] The defendant's motion should be denied.

### Defendant's Request for Attorney's Fees in Mere Gamesmanship

Because the defendant's motion to dismiss is without merit, its claim for attorney's fees is nothing short of gamesmanship. Such obvious chest-thumping does little to advance the rational disposition of Welsh's contentions. We respectfully submit that counsel for the defendant would be wise to concern itself with its own conduct. After all, perhaps counsel for the defendant would have noticed the Count III does not allege an "implied in fact" contract if it was not so pompously concerned with telling this Court how "ineluctable" it is that the defendant must be awarded its fees. *See* Defendant's Brief at 12. The defendant's request for fees should be summarily rejected.

### Conclusion

For all the foregoing reasons, Plaintiff Robert W. Welsh, d/b/a Big Ten Development, respectfully submits that the defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint and Request for Attorney's Fees should be denied.

| | |
|---|---|
| Robert P. Cummins | **ROBERT W. WELSH,** |
| The Cummins Law Firm, LLC | **d/b/a BIG TEN DEVELOPMENT** |
| 77 West Wacker Drive, Suite 4800 | |
| Chicago, Illinois 60601 | By: ___/s/ Robert P. Cummins___ |
| T: (312)578-0500 | One of His Attorneys |

---

[1] The defendant's remaining contention – that Welsh had not pleaded expectation of payment in the context of an 'implied-in-fact services" services contract – is irrelevant. The breach of contract alleged in Count III relates to the defendant's improper disclosure and exploitation of Welsh's confidential information, not to any provision of services.