Westlaw.

Slip Copy
Slip Copy, 2007 WL 4292392 (W.D.Ky.)
**(Cite as: Slip Copy, 2007 WL 4292392)**

Maker's Mark Distillery, Inc. v. Diageo North America, Inc.
W.D.Ky.,2007.
Only the Westlaw citation is currently available.
United States District Court, W.D. Kentucky,
at Louisville.
MAKER'S MARK DISTILLERY, INC., Plaintiff
v.
DIAGEO NORTH AMERICA, INC., et. al.,
Defendants.
**Civil Action No. 3:03-CV-93-H.**

Dec. 6, 2007.

Edward T. Colbert, Kenyon & Kenyon LLP, Washington, DC, R. Gregg Hovious, Fultz, Maddox, Hovious & Dickens PLC, Louisville, KY, for Plaintiff.
Anita B. Polott, Michael F. Clayton, Morgan, Lewis & Bockius LLP, Washington, DC, John S. Reed, II, Trevor L. Earl, Reed Weitkamp Schell & Vice PLLC, Louisville, KY, Anthony A. Coppola, Lawrence E. Abelman, Abelman, Frayne & Schwab, New York, NY, John E. Hanley, Michael A. Valenti, Valenti, Hanley & Robinson, PLLC, Louisville, KY, for Defendants.

**MEMORANDUM OPINION AND ORDER**

JOHN G. HEYBURN, Chief District Judge.
*1 Plaintiff Maker's Mark Distillery, Inc. ("Maker's Mark") has moved to dismiss Defendants', Tequila Cuervo La Rojena S.A. de C.V., Casa Cuervo S.A. de C.V., and Jose Cuervo International, Inc. (collectively "the Cuervo entities"), counterclaim for monetary relief brought under Section 38 of the Lanham Act, 15 U.S.C. § 1120 ("Section 38").

Maker's Mark asks the Court to dismiss the Cuervo entities' Section 38 claim because it is impossible that damages occurring some nineteen years after an allegedly fraudulent registration could proximately result as a consequence of the registration. In this case, as in most Section 38 cases, proving actual causation and damages based on fraudulent registration will be difficult.[FN1] However, at this stage of the litigation the Court is not prepared to find that

no set of facts could support the Cuervo entities' claim for relief.

> FN1.*See*J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:60 (4th ed.)(observing, "It is difficult to understand why defendants in many trademark infringement suits expend so much time, effort and money in vigorously pursuing the claim that plaintiff's federal registration was obtained by fraud ... [since] even if defendant succeeds in proving that the plaintiff's registration was fraudulently obtained, plaintiff's common law right in the mark continue ... and proof of fraud will not usually affect the result of the case.")

I.

The facts stated most favorably to the Cuervo entities follow. In March 1985, the United States Patent and Trademark Office (PTO) granted Maker's Mark's application for registration of a trademark consisting of the "wax-like coating covering the cap of the bottle and trickling down the neck of the bottle in a freeform irregular pattern."Until June 2004, the Cuervo entities' co-defendant, Diageo North America, marketed a tequila product, "Jose Cuervo Reserva de La Familia," which bore a freeform wax seal cap. In 2003 [FN2], Maker's Mark initiated this lawsuit alleging that Defendants' use of the wax-like seal on its tequila product infringed or diluted Maker's Mark's trademark. As a "direct result" of this lawsuit the Cuervo entities altered the packaging methods for the tequila product in question. Instead of selling their tequila product capped by a wax seal with an irregular pattern, resulting from allowing the wax to freely drip and dry, the Cuervo entities now "hand cut" the wax tendrils from the seal of each tequila bottle after it has been dipped in wax. (Def.'s Opp'n to Pl.'s Mot. to Dismiss Second Countercl. 10).

> FN2. The Cuervo entities were joined as defendants in 2007.

Pending before the Court is Maker's Mark's motion to dismiss the Cuervo entities' counterclaim arising

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under the Lanham Act § 38, 15 U.S.C. § 1120[FN3] which states:

> FN3. The Cuervo entities have also counterclaimed for cancellation of Maker's Mark's trademark registration pursuant to Section 37 of the Lanham Act, 15 U.S.C. §§ 1052(e)(5), 1119 on the ground that the purported trademark is functional and is therefore incapable of being validly registered as a trademark. Maker's Mark has not moved to dismiss this counterclaim and accordingly the Court does not consider it at this time.

Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

According to the Cuervo entities, Maker's Mark's 1985 trademark registration application to the PTO was fraudulent because it contained material omissions, including: (I) that the freeform irregular pattern is functional-a necessary and cost-effective way of sealing a bottle with wax and, (ii) that other alcoholic beverages, besides Maker's Mark, are sealed with colorful wax. The Cuervo entities say they have been damaged because they "have been forced to cease the use of a freeform wax seal" on their tequila product. The even, cut-off wax edge requires additional manpower and costs. (Def.'s Answer and Counterclaim to First Am. Compl. ¶ 11). They claim that the allegedly fraudulent trademark registration impairs their rights to manufacture, export, market and distribute the tequila product at issue. (*Id.* ¶¶ 22-23).

II.

**\*2** To decide this motion, the Court must determine whether damages resulting from the *enforcement* of a fraudulent trademark registration could, as a matter of law, "proximately result" from the "procure[ment]" of the registration under Section 38 of the Lanham Act.[FN4] In other words, is the harm from the enforcement of a fraudulently registered trademark a foreseeable consequence of the fraudulent registration? For the reasons discussed below, the Court is convinced that at least in some

limited circumstances, it is.

> FN4. The elements of a Section 38 claim of fraudulent procurement are as follows:
>
> > (1) a false representation regarding a material fact;
> >
> > (2) knowledge or belief that the representation is false;
> >
> > (3) an intention to induce the listener (in this case the PTO) to act or refrain from acting in reliance on the misrepresentation;
> >
> > (4) reasonable reliance on the misrepresentation; and
> >
> > (5) damage proximately resulting from such reliance.
>
> *San Juan Prods. Inc. v. San Juan Pools,* 849 F.2d 468, 472 (10th Cir.1988)(citing J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:61).

Maker's Mark urges an interpretation of Section 38 which would limit the cause of action to parties who allege direct and immediate harm *at the time of the fraudulent registration.* Under this view, harm suffered several years after registration as a result of the *enforcement* of a fraudulent **trademark** registration is not proximately caused by the act of registration, and is therefore insufficient to sustain a claim for damages under Section 38. Not surprisingly, the Cuervo entities see Section 38 claims providing a wider range of relief. The claim, they say, is not limited to parties who were doing business or competing at the time of the fraudulent registration.[FN5] Rather, they argue that altering a product in response to a party's attempt to enforce a wrongfully obtained **trademark** registration is an **injury** which proximately results from the fraudulent registration itself.

> FN5. The Cuervo entities also argue that because damages are an element of the **Section 38** claim, whether they were "a consequence" of the fraudulent registration

Slip Copy
Slip Copy, 2007 WL 4292392 (W.D.Ky.)
**(Cite as: Slip Copy, 2007 WL 4292392)**

Page 3

is a question of fact for the jury. The Court agrees that in general, causation is a question of fact. However, the threshold question here is whether, as a matter of law, a broad category of damages fall within the scope of the statute. This is a question of law for the Court to decide.

Though the Sixth Circuit has not addressed the contours of a Section 38 claim, other jurisdictions have considered later-arising Section 38 claims. In *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.,* 989 F.2d 985 (8th Cir.1993), the Eighth Circuit reviewed a jury award of $1.1 million in compensatory damages based on a finding that a restaurant name's registration with the PTO was procured through fraud because the owner did not inform the PTO that the name was based on a living person whose permission it had not obtained. The Eighth Circuit concluded that the award must be reversed as a matter of law for several reasons. First, because the party alleging fraud did not exist at the time the restaurant registered its name, the court found that it could not have been "immediately injured" by the registration. *Id.* at 990.The court also reasoned that "even without its registrations [the restaurant owner] would have had a substantially similar Lanham Act cause of action and an identical state law claim for infringement and unfair competition" because it had presented "uncontradicted evidence of prior use." *Id.* at 991.Noting that, "no case has allowed an infringer to recover as § 1120 damages, losses attributable to the trademark owner's enforcement of a valid mark because the owner enhanced its rights by a fraudulently procured registration," the court held "to recover for this type of injury under § 1120, an infringer must prove that the registration holder has no right to exclusive use of the mark allegedly infringed, in addition to proving that the registration was fraudulently procured." *Id.*

**\*3** Other courts have cited *Gilbert/Robinson* for the proposition that Section 38 "counterclaims must arise from and at the time of registration rather than later use."*See, e.g. Aureflam v. Pho Hoa Phat I, Inc.,* 375 F.Supp.2d 950,954 (N.D.Cal.2005)("[a]pplying the Eighth Circuit's reasoning," and finding, "as the parties do not dispute that [**Section 38** counterclaimant] incorporated seven years after the mark was registered, [it] cannot demonstrate **injury**

as a direct result of [allegedly fraudulent] registration."). Similarly, because an American distiller in *Joint Stock Soc'y v. UDV North America, Inc.,* 53 F.Supp.2d 692, 712 (D.Del.1999), was the *only* company marketing its brand of vodka at the time it registered its **trademark**, the court found that a Russian distiller alleging fraudulent registration sixty years later could not show that its registration "fostered either consumer confusion or unfair competition at the time."*Id.* at 712*quoting Gilbert/Robinson,* 989 F.2d at 990.

The Court is not persuaded that these decisions necessarily dictate that later enforcement of a fraudulent registration could *never* be the proximate cause of **injury** to a party. In these cases, the **Section 38** claimants failed not because their enforcement-related claims were too remote in time to the registration, but because *at the time* of the fraudulent registration they did not even exist.[FN6] Thus, they could not be within the zone of interests which the Lanham Act seeks to protect. This reasoning certainly does not foreclose the possibility that a party who did exist when a registration was fraudulently procured (and thus had a reasonable interest in preventing "unfair competition" *at the time* of the registration *and* the time of enforcement) could claim that later enforcement of the fraudulent registration proximately caused his damage. *See, e.g. Bay State Sav. Bank v. Baystate Financial Services, LLC,* 484 F.Supp.2d 205 (D.Mass.2007)(denying summary judgment in opposition to a Section 38 counterclaim filed in response to an attempt in 2004 to enforce a 1999 trademark registration application).

> FN6. In fact, in *Joint Stock Soc'y,* the Section 38 claimants were not doing business in the United States at the time they brought their claim and did not intend to enter the market unless the underlying trademark dispute was resolved in their favor. *Joint Stock Soc'y,* 53 F.Supp.2d at 707.

The value of a trademark registration is the right to enforce it against other parties. It is difficult to completely divorce the act of registration from the subsequent enforcement. What incentive would a party have to obtain a registration through fraud if the evidentiary function of registration did not have some power to deter would-be competitors? The passage of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

time from the date of registration hardly seems to diminish the causal link between the procurement of the registration and the resulting harm.[FN7]Indeed, even *Gilbert/Robinson's* search for an "immediate injury" was accompanied by an acknowledgment that the flaw in causation stemmed from the restaurant owner's exclusive use rights which derived not from the fraudulent registration but from its "longstanding use" of the name. *Id.* at 990.

> FN7. The Court is also not persuaded that the absence of a court order requiring the Cuervo entities to discontinue use of the freeform wax seal renders the extra cost of complying with the existing trademark "voluntary." As they readily admit, the Cuervo entities' abandonment of the freeform wax seal was in response to Maker's Mark's initiation of the lawsuit. Of course, the lawsuit is Maker's Mark's attempt to enforce its registered trademark rights. In this sense, although mitigating exposure to legal liability, the Cuervo entities' action are necessary to comply with a trademark that until cancelled or otherwise ruled invalid is currently in force. The Court agrees with the Cuervo entities' that *if* Maker's Mark's trademark rights are invalid "the evidentiary effect of such a Registration may impair [the Cuervo entities'] rights to manufacture, export, market and distribute" its product. Of course, in the event that Maker's Mark's **trademark** registration is found to be valid, the Section 38 claim will necessarily fail.

*4 Moreover, on the facts, the *Gilbert/Robinson* line of cases is distinguishable from the case at hand. First, and most notably, the Eighth Circuit reviewed the validity of the Section 38 claim only *after* determining that the restaurant owner had a valid **trademark** independent of its fraudulent **trademark** registration. This independent existence of a common law **trademark** destroyed the causal link between the **Section 38** claimant's **injuries** and the **trademark** registration. By contrast, here both Maker's Mark's 1985 registration *and* its underlying **trademark** rights are at issue.[FN8]Not only do the Cuervo entities challenge the allegedly fraudulent *registration* of Maker's Mark **trademark**, but they also dispute the underlying validity of the mark by arguing that the

functional nature of the wax seal destroys *any* right to **trademark** protection (Def.'s Answer and Countercl. to First Am. Compl. 6)(emphasis added). Of course, whether the wax seal is decorative or functional is a disputed question of material fact central to the proper adjudication of the underlying infringement action. In considering trademarks, the Supreme Court has explained, " '[i]n general terms, a product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.' " *TrafFix Devices, Inc. v. Marketing Displays, Inc.* 532 U.S. 23, 32 (2001)(quoting *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 165 (1995)(internal citations omitted)). Significantly, the Cuervo entities also maintain in their response to Maker's Mark's motion that they or their predecessors-in-interest *were* doing business in the United States in 1985 (the year in which Maker's Mark procured its trademark registration).[FN9] This further distinguishes their claim from the *Gilbert/Robinson* line of cases which focus on examining the interests of the party at the time of registration.

> FN8. Maker's Mark believes it could enforce its wax seal trademark rights ...*even if* it did not have a federal registration under Section 43(a) of the Lanham Act which provides a "cause of action for infringement of unregistered trademark and trade dress."*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 776 (Stevens, J. *concurring* ). However, with respect to unregistered trade dress, Section 43(a) requires:
>
>> In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected *is not functional.*
>
> 15 U.S.C. § 1125(a)(3)(emphasis added). Thus, the functionality of the mark would be material to the merits of Maker's Mark's claim under Section 43(a) of the Lanham Act in the event that its claim for trademark infringement under Section 32 (governing registered trademarks) failed.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 5
Slip Copy, 2007 WL 4292392 (W.D.Ky.)
**(Cite as: Slip Copy, 2007 WL 4292392)**

FN9. Maker's Mark notes that the Cuervo entities have not "offered specific proof" of such operation. Proof is not necessary at this time. The Cuervo entities need only allege facts, that *if proven* could support its Section 38 claim. For purposes of a 12(b)(6) motion, the Court will accept the allegation as true, even though it was asserted in the Cuervo entities' response brief and not in the pleading section of its Section 38 counterclaim.

Thus, a dismissal of the Cuervo entities' Section 38 counterclaim at this time would necessarily require deciding the underlying validity of Maker's Mark trademark and the merits of its infringement claim. The Court certainly recognizes that Maker's Mark may well have common law rights to exclude the Cuervo entities from using the free-from wax seal *even if* Maker's Mark's trademark registration is determined to have been procured through fraud. *See Gilbert/Robinson,* 758 F.Supp. 512, 526 (E.D.Mo.1991) (noting that "[t]he law is clear ... that even if registrations were procured by fraud, the validity of the registration will not affect a plaintiff's common law rights, for the right to exclude others arises from use-not registration."). To be sure, the Cuervo entities would not be entitled to recover damages under Section 38 if Maker's Mark is found to have *either* a valid trademark registration *or* an independent right to exclusive use because their claim would fail to establish that registration caused their injuries. *See, e.g. Gilbert/Robinson.* On the other hand, if Maker's Mark's trademark registration is ultimately found to have been procured through fraud *and* if its other trademark claims are similarly without merit, the Cuervo entities' claim for Section 38 damages could succeed. Maker's Mark's rights to exclusive use the freeform wax seal form the ultimate issue of this lawsuit. In the end, the Court is concerned that to dismiss the Cuervo entities' Section 38 claim at this stage in the litigation might well prematurely resolve the central claim on the merits.

III.

**\*5** Maker's Mark has also moved to dismiss the Cuervo entities' counterclaim pursuant to Rule 9(b). The Court recognizes that a Section 38 claim is subject to the heightened pleading requirements of Rule 9(b). *See, e.g., San Juan Prods., Inc. v. San Juan*

*Pools, Inc.,* 849 F.2d 468, 472 (10th Cir.1988). The Cuervo entities have pled each of the elements of the claim with sufficient particularity to afford Maker's Mark an opportunity to respond. As the Court has noted above, proof of actual damage caused by fraudulent registration may be difficult, but it is not "inconceivable." *Cf. Havanna Club Holding, S.A. v. Galleon,* 1998 WL 150983 at \*3 (S.D.N.Y.)(rejecting defendants' Section 38 counterclaim for lost sales on grounds that it was not adequately pled under Fed.R.Civ.P. 9(b), but acknowledging that it was not "inconceivable that defendants could recover" on a theory of lost sales causation whereby "Plaintiffs' assertion of [trademark rights] while utterly and clearly without merit, was nevertheless sufficiently substantial to dissuade defendants from making some, but not all, of the sales that would have otherwise been possible.") *Id.* Here, the Cuervo entities' damage is the "additional manpower and costs" to "cease use of freeform wax seal."(Def.'s Answer and Countercl. to First Am. Compl. 11, 12). These additional costs are incurred "solely to comply with Maker's Mark's wrongfully obtained Trademark" which Maker's Mark is attempting to enforce through this lawsuit. (Def.'s Opp'n to Pl's Mot. to Dismiss Second Countercl. 11). The Court believes that the Cuervo entities have satisfied the pleading requirements and that their counterclaim does not warrant dismissal on Rule 9(b) grounds.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Maker's Mark's motion to dismiss is DENIED.

W.D.Ky.,2007.
Maker's Mark Distillery, Inc. v. Diageo North America, Inc.
Slip Copy, 2007 WL 4292392 (W.D.Ky.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.