# EXHIBIT 2

LEXSEE 221 USPQ 76


Positive
As of: Jun 04, 2008

Colt Industries Operating Corp. v. Olivetti Controllo Numerico S.p.A.

Opposition, No. 64,642, to application Serial No. 195,070, filed November 30, 1978.

Trademark Trial and Appeal Board

*1983 TTAB LEXIS 26; 221 U.S.P.Q. (BNA) 73*

November 25, 1983, Decided

**DISPOSITION:**
[*1]

Decision: The opposition is sustained and registration to applicant is refused.

**COUNSEL:**

Radford W. Luther and Richard A. Dornon for Colt Industries Operating Corp.

Rish & Richardson for Olivetti Controllo Numerico S.p.A.

**JUDGES:** Before Rice, Fruge' and Krugman, Members.

**OPINION BY:** KRUGMAN

**OPINION:**

Opinion by Krugman, Member:

An application has been filed by Olivetti Controllo Numerico S.p.A., an Italian corporation to register the mark "HORIZON" for automated machine tools with controls therefor and parts thereof. n1

> n1 Application Serial No. 195,070 filed November 30, 1978 based on Italian Registration No. 213,701 issued September 4, 1967.

Registration has been opposed by Colt Industries Operating Corp. As grounds for opposition, opposer asserts that applicant's mark so resembles opposer's previously used mark "HORIZON V" for horizontal machining centers as to be likely, when applied to applicant's goods, to cause confusion, mistake or to deceive. Opposer has also alleged that applicant's predecessor in title applied for a registration for "HORIZON" for automated machine tools and controls therefor; that said application was based on the ownership of Italian Reg. No. 213,701 by [*2] applicant's predecessor; that said application issued into Registration No. 879,892 on November 4, 1969; that subsequently, both Registration No. 879,892 and Italian Registration No. 213,701 were assigned to applicant; that Registration No. 879,892 was cancelled on January 6, 1976 pursuant to Section 8 of the Act; and that applicant is not entitled to a second registration of "HORIZON" under Section 44(e) of the Act based on the same Italian Registration.

Applicant, in its amended answer to the opposition, has denied the salient allegations therein. Applicant also has affirmatively alleged that opposer is guilty of fraud on the Office in that opposer knew of applicant's claim of prior rights in "HORIZON" when opposer filed its application for registration; that opposer nevertheless falsely swore under oath that opposer knew of no one else who had the right to use the mark; that opposer's application fraudulently alleged

under oath a false date of first use earlier than any to which opposer might be entitled; and that opposer again falsely swore under oath in the opposition as to a date of first use earlier than any to which opposer might be entitled. Applicant has further alleged [*3] that opposer is guilty of unclean hands for the reasons set forth in applicant's affirmative defense basedon fraud and additionally because opposer misled applicant into believing that opposer had given up use of the mark in light of applicant's claim of prior rights when in fact opposer filed an application covering the mark.

The record consists of the pleadings, the file of applicant's application, the file of opposer's application for registration relied on by opposer pursuant to Ruel 2.122(e), applicant's answers to certain discovery requests relied on by opposer, opposer's answers to certain discovery requests relied on by applicant, a number of portions of publications relied on by opposer pursuant to Rule 2.122(e), a number of portions of publications relied on by applicant pursuant to Rule 2.122(e)(2), a copy of applicant's cancelled trademark registration relied on by opposer, and testimony taken by opposer. Only opposer has filed a brief on the case. No oral hearing was requested.

> n2 Included in applicant's notice of reliance under Rule 2.122(e) were four items objected to by opposer in its brief as not qualifying for inclusion into evidence by notice of reliance. These objected to items Nos. 6, 7, 8 and 14 of applicant's notice of reliance filed July 14, 1982 comprise a copy of portions of an agreement between applicant and a third party, Midland Engineering and Manufacturing, Inc. (item 6), a pair of press releases from Midland Engineering and Manufacturing, Inc. (item 7), a shipping document for applicant's HORIZON machine (item 8) and a list of applicant's HORIZON trademark registrations in various countries (item 14). Opposer's objections are well taken. These items do not fall into either the category of printed publications, such as books and periodicals, available to the public, or the category of official records, as those categories are contemplated by Rule 2.122(e). See: *Wagner Electric Corporation v. Raygo Wagner, Inc., 192 U.S.P.Q. 33 (TTAB 1976),* and *The Conde Nast Publications Inc. v. Vogus Travel., Inc. 205 U.S.P.Q. 579 (TTAB 1979).* These documents should have been introduced in connection with competent testimony of a witness and not by notice of reliance. Accordingly, these documents have been given no consideration.

[*4]
We note at the outset that the record clearly supports the conclusion that confusion as to source or origin is likely to arise from the contemporaneous use of the respective marks in connection with the respective goods. Applicant has admitted in response to a request for admissions that the concurrent use in the United States by applicant of "HORIZON" in connection with automated machine tools and "HORIZON" by opposer in connection with similar automated machine tools would be likely to cause confusion. While applicant has indicated in its response to opposer's request for admissions that it is unsure of the term horizontal machining centers in the United States, applicant has admitted that to the extent the term machining centers is understood, machining centers are automated machine tools. Opposer has shown by testimony that its horizontal machining center is a machine which has a spindle oriented in the horizontal plane and which performs various machining operations such as drilling, milling, boring and tapping. Applicant's goods are broadly defined as automated machine tools with controls therefor and parts thereof. It is clear that these automated machine tools includehorizontal [*5] machining centers similar to those sold by opposer. A copy of an advertisement submitted by applicant pursuant to notice of reliance depicts a machine of applicant under the heading "MACHINING CENTERS." Directly underneath this heading is the following verbiage:

"AUCTOR with vertical spindle

HORIZON with horizontal spindle."

Opposer has further shown by testimony that the specimen of use submitted in connection with applicant's application depicts a machining center with a horizontal spindle which would perform machining operations similar to those performed by opposer's "HORIZON V" machining center. Accordingly, it is apparent that applicant's goods sold under the "HORIZON" mark include goods identical to or closely related to opposer's horizontal machining centers sold under the "HORIZON V" mark. While "HORIZON" may be somewhat suggestive of the horizontal spindle in the respective machines, in our view, both "HORIZON" and "HORIZON V" are relatively strong marks as used in connection with the respective goods and we conclude that the marks are so similar that their contemporaneous use on or in connection with the respective goods would be likely to cause confusion, mistake [*6] or to deceive for purposes of Section 2(d) of the Trademark Act.

Before discussing the dispositive question of priority, we will briefly consider applicant's affirmative defenses of fraud and/or unclean hands. The following facts of record are uncontroverted. On or about August 1, 1978, opposer conducted a trademark search with respect to the mark "HORIZON V." No federal registration for HORIZON for goods

similar to machining centers was found. On November 20, 1978, applicant sent a letter to opposer advising opposer that it had prior rights in the mark "HORIZON" for machining centers. Thereafter on November 30, 1978, opposer caused another search to be made with respect to the mark "HORIZON." This report indicated that Reg. No. 879,892 was registered on November 4, 1969, subsequently assigned to applicant on March 7, 1974 and cancelled pursuant to Section 8 on January 6, 1976. On November 30, 1978, applicant filed the instant application to register "HORIZON". On January 10, 1979, opposer sent a telex to applicant in response to applicant's November 20, 1978 letter. The telex requested applicant to advise opposer of each use of the term "HORIZON" for machining centerssince [*7] January 6, 1976. In response to the telex, applicant mailed, on February 20, 1979, a letter to opposer stating, inter alia, that there had been no abandonment of the trademark by applicant in the United States; that applicant's use of "HORIZON" for many years was known internationally; and that the appearance now of another HORIZON machine in the world market undoubtedly would cause confusion. This letter from applicant was not answered and on March 1i, 1979, opposer filed its application for registration of "HORIZON V". On March 26, 1981, opposer was advised that a registration based on applicant's "HORIZON" application would be cited against opposer's application. Action on opposer's application was then suspended pending disposition of applicant's application. On June 15, 1981, this opposition was filed.

While applicant has failed to present any summary of its arguments in a brief, it appears that applicant's theory of fraud and/or unclean hands is predicated on: (1) opposer's allegedly false oath in opposer's application that no one else had the right to use the mark, (2) opposer's allegedly fraudulent statement of a date of first use in its application earlier thanany [*8] date to which opposer might become entitled and, (3) opposer's allegedly false oath in the opposition as to a date of first use earlier than any to which opposer might be entitled. Applicant also bases its theory of unclean hands on opposer's alleged misleading of applicant into believing that opposer had given up use of the mark in light of applicant's claim of prior rights. Applicant's affirmative defenses must fail for the reasons noted below.

The concept of fraud upon the Office signifies an intent to deceive the Office; that is, a willful withholding from the Office by an applicant or registrant of material information or facts which, if transmitted to the Office, would have resulted in the refusal of the registration sought. See; *SCOA Industries, Inc. v. Kennedy & Cohen, Inc., 188 U.S.P.Q. 411 (TTAB 1975)* and cases cited therein. in the present case, the date of first use alleged by opposer in its application and in the notice of opposition, even if false, cannot be said to constitute fraud on the Office. With respect to opposer's application, the earliest date which an applicant can rely upon in the absence of evidence is the applicationfiling date. See [*9] Trademark Rule 2.122(b)(2) Aside from the fact that opposer's application is not involved in this proceeding, the fact remains that an erroneous date of first use could not possibly result in the allowance of a registration which would otherwise not be allowed, as long as there was technical trademark use prior to the filing of the application. The Examining Attorney gives no consideration to alleged dates of first use in determining whether conflicting marks should be published for opposition. See Rule 2.83 and TMEP Section 1206.01(a). The procedure as to conflicting marks is based strictly on effective filing dates of applications. The only fraud that could be perpetrated on the Office with respect to false dates of first use in an application would be where no use was made as of the filing date of the application. Applicant has not alleged this with respect to opposer's application and even if such an allegation had been made, it would properly be the basis of an opposition against that application after publication and not in an affirmative defense herein.

Similarly, the allegation of a particular date of first use alleged in the opposition, even if false, does not result [*10] in a fraud on the Office since no effect is given to that allegation and opposer must prove its date of first use.

The real crux of applicant's claim of fraud and/or unclean hands appears to be the fact that after opposer knew of applicant's claim of prior rights in "HORIZON," opposer nevertheless filed its application for registration, alleging under oath that no one else had the right to use the mark. The Board disagrees with applicant that opposer's notice of applicant's adverse claim to opposer's exclusive right to use the mark followed by opposer's application for registration constituted fraud on the Office. A failure to disclose to the Office the asserted right of another cannot be said to constitute fraud unless such other person was known by the non-disclosing party to possess a superior right to use the same or substantially identical mark for the same or substantially identical goods as those in connection with which registration was sought. See: *SCOA Industries, Inc., supra.* At the time opposer filed its application, it knew that applicant was the owner of a prior registration which was cancelled under Section 8 of the Actand that while applicant claimed [*11] rights in the mark "HORIZON" in the United States, applicant did not specifically respond to opposer's inquiry as to applicant's use of "HORIZON" in the United States subsequent to the cancellation of the prior registration. It is our view that opposer had no duty to notify the Office of applicant's bare unsubstantiated allegation and, a fortiori, it cannot be said that opposer's failure to notify the Office of the bare unsubstantiated allegation caused opposer's oath to become fraudulent. Opposer's action in its failure to disclose applicant's adverse claim is consistent with opposer's belief that it has prior rights in the mark in the United States and this issue of priority remains an issue in dispute herein. Since the

allegations of fraud and/or unclean hands are bottomed on applicant's claim of priority and since priority is in dispute, it is clear that applicant's affirmative defenses based on fraud or unclean hands are not well taken.

With respect to applicant's claim that opposer misled applicant into believing opposer had given up use of the mark in light of applicant's claim of priority, this claim is without any support in the record. The fact that opposer did not respond [*12] to applicant's February 20, 1979 letter cannot reasonably be taken as a concession to applicant's position especially since applicant failed to document its use of "HORIZON" in the United States subsequent to the cancellation of applicant's prior registration, as requested by opposer in the telex mailed to applicant on January 10, 1979. Accordingly, applicant's affirmative defense of unclean hands on this ground must also fail.

We turn now to the central question in this proceeding, which is who has prior rights in the mark in the United States? In this regard, opposer has shown by testimony and exhibits that the mark "HORIZON V" was adopted by opposer as a trademark for horizontal machining centers sometime before June 28, 1978; that on June 28, 1978, an order for a "HORIZON V" machine was placed by a distributor of opposer, The Walenty Machinery Sales Co., Inc. of Newburyport, Massachusetts. This order was received June 30, 1978. While no "HORIZON V" machine was available at the time of this order, a distributors' conference was held in June, 1978 at which time the distributors were given information about the machine and the June 26, 1978 order followed. On July 14, 1978, a [*13] promotional bulletin was sent out to distributors discussing the "HORIZON V" machining center. On August 17, 1978, a working machining center was shipped by opposer from West Hartford, Connecticut to the 1978 International Machine Tool Show (IMTS) in Chicago, Illinois. While no nameplate was attached to the machine on that date, testimony indicates that the machine was labeled with the "HORIZON" name through the attachment of the shipping document. The "HORIZON V" nameplate arrived in Chicago sometime after August 17, 1978, and was attached to the machine prior to the opening of the IMTS show which ran from September 6-16 1978. At this show, the "HORIZON V" machine was viewed by tens of thousands of people. A number of advertising bulletins were distributed at the IMTS show. The machine was subsequently returned to West Hartford, Connecticut and was then shipped to several other trade shows after which it was donated by the Japanese manufacturer to Pennsylvania State University. Opposerhs first production "HORIZON V" machine was shipped in June, 1979. Since that time, opposer has continued to sell its "HORIZON V" machining centers. Opposer has since 1978 advertised its "HORIZON [*14] V" machines in various trade publications such as Metlfax and Metalworking News. Since 1980, opposer has advertised the "HORIZON V" machine in the foregoing publications as well as in American Machinist, Machine and Tool Blue book, Modern Machine Shop, and Tooling and Production, all publications having substantial circulation in the united States.

Applicant has not taken any testimony in connection with its date of first use of "HORIZON" in the United States. In answering opposer's interrogatories, applicant indicated that there have been no actual sales of applicant's "HORIZON" products in the United States. Applicant has further stated that it used the mark in the United States at least as early as August, 1977 in advertising in the publication Machinery and Production Engineering, and that it first used the mark "HORIZON" in commerce with the United States on or about February 2, 1979 by virtue of placing the mark on a display model of one of applicant's "HORIZON" machines and shipping the model to the United States to Midland Engineering and Manufacturing Inc., an American company. Applicant believed thatthe model was displayed at Midland Engineering [*15] and Manufacturing Inc. sometime after Febrauary 2, 1979 and that said model might also have been displayed by Midland at a trade show in Detroit, Michigan in April or May, 1979. Applicant could not provide any specific information with respect to any of the possible displays of the "HORIZON" model.

Applicant has relied on a number of printed publications evidencing advertising use of "HORIZON." However, the 1977 uses of "HORIZON" in Machinery and Production Engineering and Iron Age Metalworking International have not been shown to be publications having any circulation in the United States. In point of fact, the prominently appearing slogan in Machinery and Production Engineering reads "Europe's International Weekly." The earliest advertising use of the mark "HORIZON" by applicant in a publication shown to be widely known in the United States is a December 1978 advertisement in American Machinist.

In our view, a party in a proceeding of this type may rely upon advertising use or other use analogous to trademark use for purposes of establishing prior rights in a mark. See: *Computer Food Stores v. Corner Store Franchises, Inc., 176 U.S.P.Q. 535 (TTAB 1973).* [*16] However, aside from the fact that applicant's 1977 advertising use has not been shown to be in magazines having significant circulation in this country, it is our view that prior use and advertising of a mark in connection with goods marketed in a foreign country (whether said advertising occurs inside or outside the United States) creates no prior rights in said mark in the United States as against one who, in good faith, has adopted the same or similar mark for the same or similar goods in the United States prior to the foreigner's first use of the mark on goods sold in the United States, at least unless it can be shown that the foreign party's make was, at the time of the adop-

tion and first use of a similar mark by the first user in the United States, a "famous" mark within the meaning of *Vaudable v. Montamartre, Inc., 20 Misc. 2d. 757, 193 NYS 2d 332, 123 U.S.P.Q. 357 (N.Y. Sup. Ct. 1959)*. See: *Mother's Restaurants Incorporated v. Mother's Other Kitchen, Inc., 218 U.S.P.Q. 1046 (TTAB 1983)* and cases cited therein.

In the present case, we conclude that applicant has not shown any use of the mark "HORIZON" in the United States prior to the September, 1978 [*17] trade show at which opposer's "HORIZON V" machining center was displayed; that opposer adopted and began using the mark in good faith after discovering the cancellation of applicant's prior registration and not receiving a satisfactory answer from applicant regarding opposer's inquiry as to applicant's use of "HORIZON" in the United States; and that applicant has not shown that its "HORIZON" mark is a "famous" mark within the meaning of Vaudable v. Montmartre, Inc., supra. Under the circumstances, we conclude that opposer has established prior rights in "HORIZON V" in the United States. n3

> n3 In deciding this case, we note that opposer has not established that applicant's application is void ab initio. We find opposer's argument that a foreign applicant can rely only once on its "home registration as a basis for securing a United States trademark registration to be unpersuasive and without support.

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Trademark LawForeign & International ProtectionsRegistrationTrademark LawProtection of RightsPriorityGeneral OverviewTrademark LawU.S. Trademark Trial & Appeal Board ProceedingsCancellationsGeneral Overview