# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROBERT W. WELSH d/b/a )
BIG TEN DEVELOPMENT, )
                       )
       Plaintiff, )       Case No. 08 C 1342
                       )
       v. )       Judge Joan B. Gottschall
                       )
THE BIG TEN CONFERENCE, INC., )
                       )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion to dismiss the plaintiff's amended complaint and request for attorneys' fees. For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND[1]

The defendant, The Big Ten Conference, Inc. ("Big Ten"), is a group of academic institutions that sponsors athletic programs and championships. The plaintiff, Robert W. Welsh ("Welsh"), is a long-time supporter of Big Ten athletics. Beginning in 1997, Welsh began working on a business plan for Big Ten that included ideas for television programming such as talk shows, live auctions of Big Ten merchandise and memorabilia, and the re-broadcast of memorable past games. One of Welsh's ideas was for the "Big Ten Networks," a satellite/cable television station providing in-depth coverage of sports and the culture of Big Ten. *See* Ex. A to

---

[1] The factual allegations are taken from Welsh's Amended Complaint and are deemed true for purposes of this motion. *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (noting that all reasonable inferences must be drawn in favor of plaintiff). Where the exhibits to the Amended Complaint conflict with the allegations, the exhibits control. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454-55 (7th Cir. 1998) (noting that the court must consider the purpose, source, and reliability of the exhibits when applying the general rule).

Am. Compl. at 18-21. Welsh intended that he, through his company Big Ten Development, would implement the business plan for Big Ten.

After some initial discussions with Big Ten, and the receipt of correspondence indicating Big Ten's initial interest in working with Big Ten Development, Welsh set up a meeting to present his plan. On May 18, 1998, Welsh presented his plan to Big Ten in a written business plan dated May 1998 and annotated "confidential" (the "Business Plan"). *See* Ex. A to Am. Compl. Shortly after the meeting, Big Ten told Welsh that it had decided not to pursue the business relationship. However, it retained Welsh's materials, despite the fact that it had acknowledged the confidential nature of the Business Plan. Several years later, Big Ten introduced the Big Ten Network, which included several programming ideas that resembled those proposed by Welsh in 1998. Welsh filed suit for violations of § 38 of the Lanham Act, 15 U.S.C. § 1120, the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1 *et seq.*, and for breach of contract.

## II. ANALYSIS

Big Ten moves to dismiss the complaint, arguing that the facts alleged by Welsh do not give rise to a cause of action under the Lanham Act and that Welsh fails to state a claim under either of the state law counts.

### A.     Legal Standard: Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a defendant to assert by motion that the plaintiff's claim for relief fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). However, the court is "not required to accept legal conclusions either alleged or

inferred from the pleaded facts." *Nelson v. Monroe Reg'l Med. Cent.*, 925 F.2d 1555, 1559 (7th Cir. 1991).

To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The allegations must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, ___, 127 S. Ct. 1955, 1964 (2007). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to suggest a right to relief above the speculative level. *Id.* at ___, 127 S. Ct. at 1973-74 & n.14; *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007); *Concentra Health Servs., Inc.*, 496 F.3d at 776 (citing *Twombly*, 550 U.S. at ___, 127 S. Ct. at 1965, 1973 n.14).

**B.      Arguments**

Big Ten argues that the facts alleged by Welsh do not give rise to a cause of action under the Lanham Act because: (1) Welsh never used the Big Ten Network mark in commerce or sought to register any such mark at the U.S. Patent and Trademark Office ("PTO"); (2) a business plan for a television network does not create trademark rights; (3) Big Ten has long-established rights to the mark "Big Ten" that bar any claims to rights in the mark "Big Ten Network"; and (4) Welsh fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Big Ten also urges the court to dismiss the two state law counts, breach of contract and violations of the Illinois Trade Secret Act, for failure to state a claim.

1.      Count I: Lanham Act Claim

The parties dispute whether the facts alleged can give rise to a claim under § 38 of the Lanham Act. Section 38 provides that:

Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120.  The declaration implicated by a § 38 claim requires the applicant, or its agent, to certify that "to the best of the verifier's knowledge and belief, no other person *has the right to use such mark in commerce . . . .*"  15 U.S.C. § 1051(a)(3)(D), *id.* (b)(3)(D) (emphasis added); 37 C.F.R. § 2.33(b); *see also Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670 (7th Cir. 1982) (rejecting any inference that 15 U.S.C. § 1120 requires an applicant for a trademark to investigate all other possible users of similar marks).  Thus, to state a claim for fraud in the procurement of a federal trademark under § 38, Welsh must allege facts that allow for the reasonable inference that Big Ten knew that it misrepresented that no other person had the right to use the mark, Big Ten Network, in commerce.  *See Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 874 (10th Cir. 1995) (listing an additional three elements of a § 38 claim, including intent to induce action, reasonable reliance, and damages).

Despite the fact that the Lanham Act is a trademark protection statute, Welsh pointedly argues that "[t]rade secret law – rather than trademark law – is the source of Welsh's rights." Pl.'s Resp. in Opp'n to Mot. to Dismiss at 3.  Welsh does not argue that he has rights to the trademark of "Big Ten Network" itself.  Rather, Welsh's theory is that he owned the rights to certain trade secrets, namely the name "Big Ten Network" and the business ideas it encompasses as described in his Business Plan, and that Big Ten obtained its mark for Big Ten Network in violation of § 38 because it did not tell the Patent and Trademark Office ("PTO") that Welsh, and not Big Ten, had rights in the trade secrets.  The issue before the court, therefore, is whether the failure to disclose that another person has asserted a right over the mark as a "trade secret,"

where that person has not registered the mark and has employed it only to market the trade secret to the applicant, is a "false or fraudulent declaration" pursuant to § 38 of the Lanham Act.

Big Ten contends that Welsh's theory misconstrues the scope of the Lanham Act. Welsh argues that his idea for the mark "Big Ten Network" provides a cause of action under the Lanham Act because it was a trade secret, stolen by Big Ten, that was not disclosed to the PTO. However, even assuming, *arguendo*, that Welsh established trade secret rights to the name and concept of "Big Ten Network," those rights do not automatically translate into trademark rights. Welsh's § 38 claim concerns "false statements about ownership of the mark, as opposed to the use of the mark in commerce in connection with certain goods," and the Seventh Circuit has noted that it is "far from clear" whether such claims fall within the scope of § 38. *Country Mutual Ins. Co. v. Am. Farm Bureau Fed'n*, 876 F.2d 599, 601 (7th Cir. 1989). The U.S. Supreme Court has observed that trademark law "has no necessary relation to invention or discovery, but rather, by preventing competitors from copying a source-identifying mark, . . . helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (internal citations and quotations omitted).

Big Ten urges the court to follow the analysis of *Carmichael v. Prime*, No. 02-0379-C-T/K, 2003 WL 1903355 (S.D. Ind. Jan. 6, 2003), and dismiss Count I for failure to state a claim. In *Carmichael*, the plaintiffs had the idea of developing and marketing a fragrance called STARDUST, named after a famous song by one of the plaintiffs. *Id.* at *1. They took their idea to the defendants, who were in the business of creating chemical formulas for fragrances. *Id.* The parties entered into a Memorandum of Understanding, which attributed the original idea for the fragrance to one of the plaintiffs and established an agency relationship between the parties.

*Id.* The parties agreed that the defendants would inquire into whether the STARDUST trademark was free and, if so, reserve it in the name of the plaintiffs. *Id.* at *2. However, the defendants filed a Statement of Intent to Use with the PTO in the name of their own company. *Id.* As part of the application, one of the defendants represented to the PTO that, to the best of his knowledge, no other person or entity had the right to use the trademark STARDUST in commerce. *Id.* The plaintiffs brought suit to cancel the STARDUST trademark and for damages pursuant to 15 U.S.C. § 1120 on the basis of fraud on the PTO. *Id.* at *3.

In *Carmichael*, the plaintiffs argued that the defendants deceived the PTO by affirming that they were unaware of any other party who had rights to the trademark. *Id.* They asserted two possible sources of ownership of the trademark: (1) the origination of the idea for a STARDUST fragrance; or (2) an implied or express contractual agreement between the parties. *Id.* The court rejected the first theory holding that "[t]he fact that [one of the plaintiffs] hatched the original idea for marketing a perfume under the STARDUST name simply does not give her any rights to the trademark; only by actual usage . . . do such rights accrue." *Id.* at *4. In so holding, the court relied on the well-established trademark law principle that "rights in trademarks are not gained through discovery or invention of the mark, but only through actual usage." *Id.* (quoting McCarthy on Trademarks & Unfair Competition § 16:8 (4th ed. 1996) and citing various district court cases). The court rejected the second theory also, noting that it may give rise to a cause of action under the agency agreement, "[b]ut it is a different matter to claim that title to the trademark in fact passed to the Plaintiffs, which can only occur by either use of the mark in commerce or purchase of a pre-existing business which employs that mark." *Id.* Thus, the court concluded that "there is no possible set of facts that Plaintiff could establish

consistent with the allegations that would demonstrate the falsity of [the defendants'] oath to the PTO" and dismissed the claim. *Id.* at *5.

The facts of *Carmichael* and this case are remarkably similar. In both cases, the plaintiffs had ideas for names of products. In both cases, the plaintiffs went to another party with their ideas seeking a mutually-beneficial business relationship. In both cases, the other party subsequently registered the name as a trademark with the PTO without disclosing that the plaintiff had originated the idea. In both cases, the plaintiffs did not use the name in any commercial activity beyond discussing plans for the name with the defendant. In both cases, the plaintiffs filed claims under § 38 of the Lanham Act. Despite these similarities, Welsh argues that *Carmichael* is factually inapposite because he owned the name "Big Ten Network" *as a trade secret* at the time of Big Ten's application to the PTO whereas the plaintiff in *Carmichael* merely had the idea for the name.[2] However, Welsh cites no authority that suggests that an application that fails to disclose that someone other than the applicant claims the idea as a trade secret is categorically different from an application that fails to disclose that someone other than the applicant had the idea for the name first. Therefore, the court rejects as unpersuasive Welsh's attempt to distinguish the facts of the cases.

Big Ten points to *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921 (S.D. Tex. 2004), *aff'd*, 129 Fed. App'x 874 (5th Cir. 2005), as further support for its argument that an idea for a television show cannot be protected by trademark law. In *Keane*, another case that is factually similar to that at bar, the plaintiff had circulated a "descriptive sales packet" to various production companies that included an idea for a talent show named "American Idol." *Id.* at

---

[2] As Big Ten points out, Welsh's argument as to ownership is not a fact but a legal conclusion that the court does not have to accept. *See Twombly*, 550 U.S. 544, ___, 127 S. Ct. 1955, 1965 (2007) ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

932. Sometime thereafter, one of the production companies produced a television show named "Pop Idol," which was licensed to the defendant and produced as "American Idol," the popular television show that showcases the talents of amateur singers. *Id.* The plaintiff in *Keane* did not allege prior commercial use of the name, but rather alleged ownership of the idea for "American Idol," and claimed rights in the mark because he had used it first. *Id.* at 926. The court in *Keane* observed that "trademarks are devices intended to identify fully developed products and services, not ideas for products and services." *Id.* at 933. It therefore rejected the plaintiff's argument that he owned the *idea* of "American Idol," but noted that the *phrase* "American Idol" could be a trademark. *Id.* Thus, the court concluded that it "could only assess whether [the plaintiff] has alleged a set of facts to support a claim for infringement upon his 'American Idol' mark, not for theft of an idea for a product to be called 'American Idol.'" *Id.* at 934. The court then rejected the plaintiff's argument that distribution of a sales packet demonstrated that the mark was used in commerce. *See id.* at 937 ("Just as a 'product' is distinct from an 'idea for a product,' an attempt to sell an idea to potential investors is not analogous to the sale of a trademarked good or service to the public at large."). It concluded that the plaintiff's claim did not concern a "product" but only an unprotectable idea and, therefore, dismissed the Lanham Act claim. *Id.*

The court finds the reasoning of *Carmichael* and *Keane* to be consistent with precedent and persuasive. *See, e.g.*, McCarthy on Trademarks & Unfair Competition § 16:11 (4th ed. 1996) ("A business plan or a concept for a new trademark does not in itself establish protectable trademark rights."); *Am. Express Co. v. Goetz*, 515 F.3d 156, 160-61 (2d Cir. 2008) (finding that a marketer did not use a slogan as a trademark where he offered it as part of a business proposal to credit card companies because he did not use it to differentiate the origin of the services). Welsh's attempt to persuade the court otherwise relies on an overly broad reading of the case law

to encompass any and all protectable interests and blatantly ignores the statutory context in which the cases arise, namely the Lanham Act, which deals only with trademarks. Following the reasoning of *Carmichael* and *Keane*, the court concludes that Welsh cannot assert a trademark right in his idea for the name, or content, of "Big Ten Network" under the Lanham Act. As did the court in *Keane*, the court now considers whether Welsh has a cognizable claim to the name itself.

Because of trademark law's focus on product identification, a fundamental tenet is that "the right to a particular mark grows out of its use, not its mere adoption . . . ." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918). Contrary to Welsh's contentions, a mark is not "used" when it is presented to a potential customer as part of a business plan; it must be employed in commerce such that it distinguishes the goods or services of a seller from others in the marketplace. McCarthy on Trademarks & Unfair Competition § 16:1 (4th ed. 1996); *see also Allard Enters. v. Advanced Programming Res.*, 249 F.3d 564, 571-72 (6th Cir. 2001) (distinguishing federal registration of a mark from common law ownership of a trademark). Welsh alleges only that he thought of the term, used it in a business plan, and presented it to Big Ten. He does not allege that he used the term in commerce or that he has any market share to protect from misuse of the mark. Welsh's actions do not rise to the required level of "use" to trigger protection under the Lanham Act and do not give rise to a colorable claim of ownership of the mark that renders Big Ten's failure to disclose Welsh's prior use of the term on its application to the PTO a violation of the Lanham Act.

Welsh counters Big Ten's argument that Welsh fails to allege a cognizable injury by focusing on his damages. But any discussion of damages is premature without a predicate legal claim. This case is essentially a claim for misappropriation of trade secrets. Trade secret

protection is a product of state law, which should be distinguished from federal trademark law. *See, e.g.*, *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 429 F. Supp. 2d 1179, 1189 (E.D. Miss. 2006) (rejecting an argument that the Lanham Act, in conjunction with the Paris Convention, creates a cause of action for misappropriation of trade secrets); *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1287 (S.D. Fla. 2001) (admonishing a plaintiff for "confus[ing] the scope of the Lanham Act with that of trade secrets protection, which is a product of state law"). The court declines to expand the reach of the Lanham Act to encompass such claims, especially where Illinois has enacted a statute that covers this exact claim. *See* Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/2(b)(2) (encompassing in the term "misappropriation," the "use of a trade secret of a person without express or implied consent by another person").

The court concludes that Welsh's allegations do not establish a cognizable claim under the Lanham Act and, therefore, Count I is dismissed. The court does not reach the parties' arguments on whether Big Ten's pre-existing use of its mark militates against another party's use of the mark "Big Ten Network," or whether Welsh's allegations comport with Rule 9(b).

### 2.    Fee Request Pursuant to Section 35 of the Lanham Act

Big Ten argues that the court should award it fees pursuant to § 35 of the Lanham Act, which states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Welsh, rather than responding to the merits of the argument, chooses solely to attack Big Ten's motives for the fee request. Despite the lack of useful argument from Welsh, the court reviews the applicable case law and facts to determine whether this is an "exceptional" case warranting an award of fees. The Seventh Circuit has held that, to award fees to a prevailing defendant, the court must determine whether the suit is "oppressive." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) (citing *Door*

*Sys., Inc. v. Pro-Line Door Sys., Inc.*, 126 F.3d 1028, 1030 (7th Cir. 1997)). The court may determine that "[a] suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *Id.*

Big Ten cites several cases that address fee awards to prevailing defendants, thereby providing guidelines for what constitutes an "oppressive" suit. *See, e.g.*, *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 884 (7th Cir. 2007) (discussing bitter discovery disputes and the paucity of evidence produced in support of the plaintiff's claims); *S. Indus., Inc.*, 249 F.3d at 627 (noting that the district court awarded fees because the plaintiff asserted claims that were meritless and employed dilatory tactics during four years of litigation); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 389 F. Supp. 2d 983, 986 (N.D. Ill. 2005) (finding the case "exceptional" because, in response to a motion for summary judgment, the plaintiff failed to produce a shred of evidence to support a necessary element); *Top Tobacco, L.P. v. N. Atl. Operating Co.*, No. 06 C 950, 2007 WL 1149220, at **2-5 (N.D. Ill. Apr. 17, 2007) (awarding fees following summary judgment where the plaintiff brought weak claims, asserted contradictory positions to the court and to the PTO, and gave "absurd" deposition testimony); *S Indus., Inc. v. Ecolab, Inc.*, No. 96 C 4140, 1999 WL 162785, at *8 (observing that the plaintiff's claims were without merit, that little evidence was produced in support at summary judgment, and that the plaintiff had a pattern of obstruction during discovery). It is noteworthy that the cases cited all arose following a motion for summary judgment and involve "scorched earth" litigation tactics that needlessly increased the costs of litigation over many years.

The instant motion for fees does not come after years of litigation or a successful motion for summary judgment. Rather, it accompanies a motion to dismiss filed two months after the case was initiated. It is true that the Welsh advanced a theory that this court has found patently

untenable; however, it was not a theory that had been squarely rejected by the Seventh Circuit. As such, it is difficult to determine whether the assertion of the theory is "oppressive" or merely an example of overly optimistic advocacy. Big Ten argues that the fact that Welsh filed an amended complaint asserting the same Lanham Act claim, with no additional factual basis, after receipt of Big Ten's initial motion to dismiss, shows that the case is oppressive. However, his re-pleading of the Lanham Act claim demonstrates nothing more than that Welsh, erroneously, believed it to be a viable claim. Moreover, under notice pleading rules, Welsh is required only to plead sufficient facts to place Big Ten on notice of the claim, which he did. Further militating against an award of fees is the fact that Big Ten has avoided discovery (as evidenced by its motion to stay and Welsh's companion Rule 37 motion), which means that it has avoided the costly activities that typically prompt courts to award fees.

The Seventh Circuit has cautioned that "[p]laying hard – by the rules – cannot suffice to make a case exceptional under § 1117(a). . . . [C]onduct must rise to the level of oppressive in order to justify declaring a case exceptional." *TE-TA-MA Truth Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 264 (7th Cir. 2004). Although the court rejects Welsh's unprofessional characterizations of Big Ten's arguments, it also finds Big Ten's arguments unpersuasive. In light of the posture of the case, the court concludes that it does not meet the criteria to be classified as "exceptional." The motion for attorney's fees is denied.[3]

3.     <u>Counts II & III: State Law Claims</u>

Big Ten urges the court to dismiss the remaining state law claims for failure to state a claim. The court declines to exercise supplemental jurisdiction based on the dismissed Lanham Act claim at such an early stage in the case. No other basis for federal jurisdiction is apparent.

---

[3] Given the court's finding that this case is not "exceptional," it does not reach the question of whether Big Ten is a prevailing defendant by dint of success on a Rule 12(b)(6) motion.

*See* 28 U.S.C. § 1331 (describing federal question jurisdiction); *id.* § 1332 (requiring complete diversity of citizenship and a minimum amount in controversy of $75,000 as a basis for federal jurisdiction over state law claims). Even construing the alleged facts broadly, the court is unable to discern any alternative federal legal basis for Welsh's claims. Moreover, the allegations of the Amended Complaint demonstrate that the requirements for diversity jurisdiction are not met. Am. Compl. ¶ 2 (alleging Welsh is a "resident" of Lake County, which is in Illinois); *id.* ¶ 3 (alleging that Big Ten is a Delaware Corporation with its principal place of business in Cook County, which is also in Illinois). Thus, the court lacks subject matter jurisdiction to consider the merits of the parties' arguments regarding Counts II and III.

### III. CONCLUSION

The defendant's motion to dismiss Count I of the plaintiff's Amended Complaint is granted. Its motion for fees is denied. The remainder of the case is dismissed for want of subject matter jurisdiction.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 21, 2008